*In re* WILL OF ANNA SIMON.—(WILLIAM A. BURMEISTER, Appellee, *vs.* THE NORTHERN TRUST COMPANY, Appellant.)

*Opinion filed December 16, 1914—Rehearing denied Feb. 4, 1915.*

WILLS—*proponents not limited to subscribing witnesses on appeal to circuit court from order denying probate.* On appeal to the circuit court from an order denying probate the proponents may prove the execution of the will by any evidence competent to establish a will in chancery, and while they are required to produce the subscribing witnesses, if alive and sane and within the jurisdiction of the court, they are not limited to nor bound by their testimony.

APPEAL from the Circuit Court of Cook county; the Hon. ADELOR J. PETIT, Judge, presiding.

ARTHUR J. HAGGENJOS, for appellant.

FRANK L. TUTTLE, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Anna Simon died in the city of Chicago November 28, 1912, leaving a paper purporting to be her last will and testament. Probate of this purported will was denied by the probate court of Cook county at the May term, 1913. On appeal to the circuit court of that county it was found that the said paper was the last will and testament of Anna Simon and it was ordered that the same be admitted to probate. This appeal has been perfected to review the order of the circuit court.

The will was executed on the afternoon of November 27, 1912, and Mrs. Simon died about two o'clock the following morning. She was in a dying condition at the time she executed the will, and while the testimony is conflicting as to her condition of mind at that time, we are not able to say that the circuit court erred in this particular in admitting the will to probate.

The principal question in the case is whether the will was properly executed and attested.    Mrs. Simon did not attach her signature to the instrument but the same was executed by mark.    It was witnessed by Floyd B. Garwick, who drafted the will, Thyra Rasmussen, the nurse in attendance upon Mrs. Simon, and Dr. Martin A. Schupmann, a physician who had been called in consultation upon the case.    Miss Rasmussen and Dr. Schupmann each testified that they did not see Mrs. Simon execute the will; that she did not state or indicate to them, or either of them, in any manner, that she had executed the same; that she did not request either of them to sign the instrument as a witness; that no one in her presence asked either of them to sign the same as a witness, and that they did not sign their names to the instrument as witnesses, in the presence of the testatrix, at a place where it was possible for her to see them sign.

At the time the will was executed Mrs. Simon occupied a bed-room at the west end of a suite of three rooms of equal width.    The bed upon which she lay was in the southwest corner of the room and occupied a greater portion of the room.    A door opened from the north-east corner of the bed-room into the adjoining room.    Immediately outside this door and along the north wall of the second room was a table.    This room is referred to by the witnesses as the living room.    East of the living room is the parlor, the door between these two rooms being in the center of the dividing partition.    In the center of the parlor was another table.

Garwick testifies that he drew the will according to directions which Mrs. Simon gave him that day; that after he had drafted it he read it over to Mrs. Simon and she told him it was all right; that when he requested her to sign it she stated she felt too weak and asked him to write her name for her, which he did, she making her mark; that he then told her it was necessary to have two wit-

nesses; that she requested him to secure a Mr. Burmeister, who had been named as executor in the will, and a Mr. Marth, who was one of the legatees, whereupon the witness informed her that they would not be competent; that he then asked her if it would be satisfactory if he, the doctor and the nurse should sign as witnesses, and she said that would be all right; that thereupon the witness, Dr. Schupmann and Miss Rasmussen went to the table in the adjoining room, just outside the bed-room door, and signed as witnesses in the presence of Mrs. Simon and within plain view of where she was lying on the bed; that her view was unobstructed and she was facing the three witnesses as they signed the will. This witness testifies that both Dr. Schupmann and Miss Rasmussen were in the room at the time he read the will to Mrs. Simon and at the time the conversation occurred in reference to securing the witnesses. A number of persons were present at the time of these occurrences, but many of them were not competent to testify. Mrs. Lena Burmeister, the mother of the executor named in the will, and Mrs. Hattie Waser, who was related to Mrs. Simon, both testified that they were present at the time of these occurrences and corroborated the testimony of Garwick in every particular.

Miss Rasmussen testified that she was not present when the will was read to Mrs. Simon and did not see her execute it; that Mrs. Simon did not state to her or indicate to her in any manner that she had executed a will; that she signed her name as a witness to a paper which she understood was Mrs. Simon's will; that she did not see either Mr. Garwick or Dr. Schupmann sign as witnesses, and that she signed the paper on the table in the parlor at a place entirely without the presence of the testatrix and where it would have been impossible for her to see the signing. This witness further testified that when this paper was being prepared both she and the doctor were requested to

leave the room, and if Mrs. Simon signed the will at all she did it while the witness was not in the room.

Dr. Schupmann testified that he knew a will was being prepared and that it was intended that Mrs. Simon should sign it, but while the will was being executed he sat in the window on the north side of the bed-room; that the space between where he sat and the bed was crowded with the persons who were present and he could not see Mrs. Simon; that he did not see her execute the will and did not hear her state or see her indicate in any manner that she had signed the same. He states that he heard some discussion between Garwick, Burmeister and Marth about having her make her mark. Dr. Schupmann also testifies that he, too, signed as a witness at the table in the parlor out of the presence of the testatrix.

On appeal to the circuit court from an order of the county court refusing to admit a will to probate the proponents may prove the execution of the will by any evidence competent to establish a will in chancery, and while they are required to produce the subscribing witnesses if alive and sane and within the jurisdiction of the court, they are not limited to or necessarily bound by the testimony of the subscribing witnesses. (*In re Will of Barry,* 219 Ill. 391.) The conflict between the testimony of Dr. Schupmann and Miss Rasmussen and the other witnesses is irreconcilable. Each of the witnesses testifies minutely and in detail to all the circumstances concerning the execution of the will and enjoyed equal opportunities for observing all the circumstances attending the transaction. The trial court saw the witnesses and heard them testify and has seen fit to attach greater credibility to those who testified to the proper execution and witnessing of the instrument than to those who testified to the contrary. We are unable to say that the trial court reached the wrong conclusion.

Appellant contends that the circuit court was without jurisdiction, for the reason that the transcript certified by

the clerk of the probate court did not show that the probate court had been regularly convened for the May term, 1913. This objection was not made on the trial, but had it been made it must necessarily have been overruled for the reason that the certificate was in proper form and contained all the recitals necessary to give the circuit court jurisdiction. It recited, among other things, that on the 7th day of May, 1913, the same being one of the days of the May term, there were present the judge, sheriff and clerk of the court, and it then recited the proceedings which were had and from which the appeal was prosecuted.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*