(No. 11073.)

ELIZABETH HUTCHISON *et al.* Appellants, *vs.* G. F. KELLY *et al.* Appellees.

*Opinion filed December 21, 1916—Rehearing denied Feb. 9, 1917.*

1. WILLS—*fact that parts of will are written in different colored ink is not evidence of alteration.* The fact that one clause of a will is in ink of a different color from the rest of the will does not, of itself, constitute an alteration and is not evidence of an alteration requiring explanation by extrinsic evidence; nor does the fact that different parts of a will were written at different times constitute evidence of an alteration.

2. SAME—*rule as to when evidence of alteration requires explanation.* There can be no evidence of alteration of a will requiring explanation unless there is some circumstance which might create a suspicion that the alteration might have been made after the execution of the will.

3. SAME—*attestation clause is prima facie evidence of due execution of will.* The attestion clause is *prima facie* evidence of the due execution of a will, and the probate thereof does not depend on the recollection, or even the veracity, of subscribing witnesses.

4. SAME—*proponents of a will not confined to subscribing witnesses on appeal to circuit court.* While the proponents of a will are confined in the county court to the subscribing witnesses, yet

in the circuit court, on appeal, they may prove the execution of the will by any evidence competent in chancery for that purpose.

5. SAME—*probate should not be refused because witnesses disagree as to time will was executed.* On application to probate a will the question is whether the will was duly executed by the testator, and probate should not be refused merely because the subscribing witnesses disagree as to whether the will was executed on the day it bears date.

6. ALTERATION—*fact of alteration in a written instrument raises no presumption against its validity.* The mere fact of an alteration in a written instrument raises no presumption of law as to when it was made or against the validity of the instrument.

7. SAME—*party claiming benefit of an instrument must explain alteration.* The party claiming the benefit of an instrument must explain an alteration, and if it is suspicious in appearance and not satisfactorily explained the conclusion of fact follows against the instrument, but the appearance of the instrument, alone, may furnish a satisfactory explanation without extrinsic evidence.

APPEAL from the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding.

HERRICK & HERRICK, and W. B. LEACH, for appellants.

DEMANGE, GILLESPIE & DEMANGE, and STERLING & WHITMORE, (W. W. WHITMORE, guardian *ad litem,*) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Abram Kelly, of McLean county, died December 29, 1915, and an instrument purporting to be his will was presented in the county court for probate. Probate was refused, and upon appeal was also refused in the circuit court, and the proponents have appealed to this court.

Abram Kelly was eighty-six years old when he died. The will purported to have been executed January 2, 1913. He was then living in Bloomington, having moved there in 1907 from Heyworth. He returned to Heyworth in the fall of 1913 and lived there until he died. The will bore

his genuine signature and the following attestation clause was attached to it:

"The above instrument, consisting of two sheets, was now here subscribed by A. Kelly, the testator, in presence of each of us, and was at the same time declared by him to be his last will and testament, and we at his request sign our names hereto in his presence as attesting witnesses.    ED. WISE, of Heyworth.
                 EDWARD RYBURN, of Heyworth."

The signatures to the attestation clause were the genuine signatures of the witnesses. It was proved on the trial, and was not disputed, that at the time of the execution of the paper Kelly was of sound mind. There is an irreconcilable conflict in the testimony of the subscribing witnesses as to the circumstances under which the signatures were attached to the paper. The witness Ryburn testified that he was in the Heyworth State Bank on January 2, 1913, for the purpose of making a deposit of rent which he had received the day before, when J. P. Shelton (who wrote the will, was named executor thereof and was cashier of the bank,) asked him to sign a will as witness. Shelton stepped out of the bank to get another witness and brought Ed Wise in and the three went to the back room of the bank, where Kelly was. Shelton said, "This is Mr. Kelly's will and he wishes you as witnesses, and he must sign in your presence and you must sign in his presence and in the presence of each other." Kelly signed the will in the presence of both witnesses and the witnesses signed in his presence and in the presence of each other. Shelton was also present. Ed Wise, the other witness, testified that the paper was signed in May or June, 1914, in the back room of the bank; that he and Ryburn were standing in front of the bank, in their shirt sleeves, when Shelton asked them to sign Kelly's will; that they went in and Shelton said, "This is Mr. Kelly's will," and they signed it in his presence and in the presence of each other but that Kelly was not present. Wise testified that he had seen Kelly about twenty minutes before, going west across the railroad track, and that the will

was witnessed after Kelly moved back to Heyworth from Bloomington. The back room of the bank was separated from the front room by a vault which came to within about four feet of the ceiling, and a door which was not so high as the vault. Lyman P. Rutledge, assistant cashier, testified that Kelly came to the bank on January 2, 1913, and talked with Shelton in the back room; that then Shelton came out, asked Ryburn if he would sign a paper in the back room and took him and Wise into the back room; that witness was from twelve to fifteen feet from where they were and heard Shelton say, "This is Mr. Kelly's last will and he would like to have you gentlemen sign as witnesses," and, "Mr. Kelly, sign in the presence of the witnesses and the witnesses sign in the presence of one another;" that this occurred while Kelly was living in Bloomington. Shelton was offered by the proponents as a witness, but on objection was held incompetent because of his interest as executor named in the will.

In opposition to the probate, testimony was introduced which tended very strongly to show that on January 1 and 2, 1913, Kelly was sick, suffering from double hernia and a severe cough; that his hernia had been inflamed and rendered painful by the cough, and that he was in his home in Bloomington, unable to walk about without assistance, and that therefore he could not have been in Heyworth on January 2. There was also evidence tending to prove that both in the latter part of December, 1912, and the early part of January, 1913, Kelly was suffering with a severe cough, which weakened him, and an inflamed side, and that he could not cross the room or get out of bed. There was also evidence that Ryburn had said that he had forgotten that he had signed the will until he talked the matter over with Shelton, but that Shelton called circumstances to his mind and then he remembered it.

The original will has been certified to this court. It was written upon a printed form. The written part is in blue

ink, except the date (which appears both in the caption and at the end of the will) and one clause, which are written in black ink. The following is a copy of the will, the printed part in small capitals, the part written in blue ink in ordinary type and the part written in black ink in italics:

THE LAST WILL AND TESTAMENT OF A. Kelly OF THE city OF Bloomington IN THE COUNTY OF McLean AND STATE OF Illinois MADE AND PUBLISHED THE *2nd* DAY OF *Jany* IN THE YEAR OF OUR LORD, ONE THOUSAND NINE HUNDRED *thirteen.*

IN THE NAME OF GOD, AMEN, I, A. Kelly OF THE city OF Bloomington IN THE COUNTY OF McLean AND STATE OF Illinois OF THE AGE OF 82 YEARS AND BEING OF SOUND MIND AND MEMORY, DO HEREBY MAKE, PUBLISH AND DECLARE THIS, MY LAST WILL AND TESTAMENT, IN MANNER FOLLOWING, THAT IS TO SAY:

FIRST—IT IS MY WILL THAT MY FUNERAL EXPENSES AND ALL MY JUST DEBTS BE FULLY PAID.

SECOND—I GIVE AND bequeath to Lucy Kelly, my wife, all of my estate, both real and personal for her use and support during the term of her life and while she remains my widow.

Third—I give and bequeath to my daughters, after the death of my wife, Annie Van Horn and Lulu Rehker, the East Half of the Southwest quarter of Section thirty two, Town Twenty Two, North of Range Two East of the Third Principal Meridian, but before coming into possession of this property they shall pay to my grandchildren the following sums.

To Clinton Kelly—one thousand dollars,
"   Edna Kelly—Two hundred fifty dollars
"   Mabel Kelly—Two hundred fifty dollars,
"   Bernad Kelly—Two hundred fifty dollars
"   Lucy Kelly—Two hundred fifty dollars
"   Pauline Kelly—Two hundred fifty dollars

Fourth—To my daughter Lizzie Kelly I bequeath all of my household goods and property previously conveyed by deed.

Fifth—My son Frank Kelly, having already received all that might be due him from my estate is not to receive any part in this distribution.

Sixth—The rest and residue of my property I give and bequeath to Annie Van Horn and Lulu Rehker, share and share alike.

*Sixth—The deed executed to Lulu Rehker shall be delivered to her by my executor, and shall become her property.*

LASTLY—I HEREBY NOMINATE AND APPOINT Joseph P. Shelton TO BE THE EXECUTOR OF THIS, MY LAST WILL AND TESTAMENT, WITHOUT BOND, HEREBY REVOKING ALL FORMER WILLS BY ME MADE.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND AND SEAL, the *2nd* DAY OF *Jany.* IN THE YEAR OF OUR LORD, ONE THOUSAND NINE HUNDRED *thirteen.*

A. *Kelly.*

THE ABOVE INSTRUMENT, CONSISTING OF TWO SHEETS WAS NOW HERE SUBSCRIBED BY A. Kelly, THE TESTATOR, IN PRESENCE OF EACH OF US, AND WAS AT THE SAME TIME DECLARED BY him TO BE his LAST WILL AND TESTAMENT, AND WE, AT his REQUEST, SIGN OUR NAMES HERETO IN his PRESENCE AS ATTESTING WITNESSES:

· *Ed Wise* OF *Heyworth.*
*Edward Ryburn* OF *Heyworth.*

The form was printed upon a sheet of paper folded at the top, and the first six clauses of the will ended near the top of the second page. The clause in black ink followed, occupying a little more than three lines, and the rest of that page and more than half the third page were blank. The deed referred to in the clause of the will written in black ink was a warranty deed dated November 23, 1903, executed by Kelly and his wife, conveying a lot in Bloomington to Lulu Rehker for life and to such of her children as might be living at her death. The deed was acknowledged on the day of its date and recorded July 19, 1916. All the written part of the will except the signatures is in Shelton's handwriting. The evidence shows that both blue ink and black ink were used in the bank at the time, as well as steel pens, gold pens and fountain pens.

The court admitted the attestation clause in evidence but sustained an objection to the admission of the will for the reason that its appearance showed an alteration and that it was incumbent on the proponents to explain that alteration. The fact that one clause of the will was written in ink of a different color from the rest of the will did not, of itself, constitute an alteration and was not evidence of an alteration requiring explanation by extrinsic evidence. There was no evidence of an alteration of the instrument, either on its face or otherwise, but if there were, the mere fact of an alteration in a written instrument raises no presumption of law as to when it was made or against the validity of the

instrument. The question as to when, by whom and with what intent the change was made is one of fact to be submitted to the jury. The party claiming the benefit of the instrument must explain the alteration, and if it is suspicious in appearance and not satisfactorily explained, the conclusion of fact follows against the instrument. The appearance of the instrument, alone, may furnish a satisfactory explanation without extrinsic evidence. (*Catlin Coal Co.* v. *Lloyd,* 180 Ill. 398; *Gage* v. *City of Chicago,* 225 id. 218.) The objection to the admission of the will in evidence should therefore have been overruled.

Even if different parts of the will were written at different times this would constitute no evidence of an alteration. It might be said that each successive clause was an alteration, but until all were written the instrument was not complete, and there can be no evidence of alteration requiring explanation unless there is some circumstance which might create a suspicion that the alteration might have been made after execution. Here the circumstances all point to the opposite conclusion. The will was all written by the same hand and bears on its face no indication that it was not all written at the same time. The date of the will is inserted in the same ink as the clause which is the basis of the objection, and the signatures of the testator and the witnesses are in the same ink. So far as the face of the instrument is concerned, it would appear that this clause, together with the date of execution, was inserted by the same hand, in the same ink, at the same time, and before execution. If speculation were to be indulged, an inference might fairly be drawn that the instrument having been prepared in part, the testator, before execution, caused the clause to be added for the purpose of assuring the title to the grantee in the deed which he had previously executed, the date was then inserted and the will executed. So far as the different colored inks are concerned, the will may have been prepared in the front room at a desk where blue ink was used, car-

ried into the back room, the clause in question added, and the will executed at a desk or table where the ink was black. There is evidence that Kelly came into the front room of the bank and talked with Shelton, that they then went into the back room, and afterward Shelton came out, got the witnesses and took them into the back room, where the will was executed. If the date, only, had been inserted in black ink it could not well be claimed that it was a suspicious circumstance. If half the will had been written in ink of one color and half in ink of another color it could not have caused suspicion that either half was improperly inserted. How, then, can the fact that the writer of the will used ink of a different color from that used in the rest of the will for writing one clause and inserting the date in the proper place in the printed form cause a suspicion that he did it after the will was executed, particularly when the signatures of the testator and the witnesses are in the same ink? The fact that this clause is numbered "Sixth" when the immediately preceding clause is numbered "Sixth" is a mistake which might readily arise in writing the instrument from the fact apparent on its face that the fifth and sixth clauses form a continuous paragraph, the sixth following the fifth with no apparent break, and the eye of the writer, in looking for the number of the paragraph, might readily overlook the word "Sixth."

Counsel for the appellees regard it as a suspicious circumstance that the will recites the age of the testator as eighty-two years when the testator was born in 1829. It appears from the testimony of his daughter that the McLean county records show that her father was born in 1830, so that on January 2, 1913, he would be eighty-two past, but she says they found it was a mistake and he was born in 1829.

This instrument was signed by Abram Kelly. It was attested by two credible witnesses, who certified that he signed and acknowledged it in the manner required by law.

One of the witnesses made the declaration, under oath, to all the circumstances required for the admission of the will to probate. The other repudiated the statement signed by him, saying that he had not read it, and denied that the testator acknowledged the will or was present when the witnesses signed as attesting witnesses. The attestation clause was *prima facie* evidence of the due execution of the will. (*Thompson* v. *Owen,* 174 Ill. 229.) The probate of wills does not depend upon the recollection or even the veracity of subscribing witnesses. While the proponents are confined in the county court to the subscribing witnesses, in the circuit court, on appeal, they may prove the execution of the will by any evidence competent in chancery for that purpose. (*In re Will of Simon,* 266 Ill. 304.) The testimony of Ryburn shows a full compliance with the statute. Though he stated after Kelly's death that he did not remember witnessing his will, it is certain that he did witness it, and after he had talked with Shelton and examined his deposit slip at the bank his memory was refreshed as to the details. He is corroborated very fully by Rutledge, and the direct evidence preponderates clearly in favor of the legal execution of the will. The evidence that Kelly was not in Heyworth at the time the will bears date does not tend to contradict the evidence that he executed the will at some time. The question is not whether Kelly executed the will on January 2, 1913, but is, did Kelly execute the will? The witnesses on one side or the other are mistaken as to the date of the occurrences to which they testify, but whichever may be right, the great preponderance of the evidence shows that Kelly executed the will in the manner required by law and it should have been admitted to probate.

The judgment is reversed and the cause is remanded to the circuit court, with directions to admit the will to probate.

*Reversed and remanded, with directions.*