MAURICE J. MAHAN *vs.* ALFRED J. PERKINS.

Norfolk.   December 2, 1930. — January 7, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Will*, Execution, Validity.   *Evidence*, Competency, Of intent, Declaration of deceased person.   *Words*, "Action."

G. L. c. 233, § 65, does not apply to proceedings concerning the probate of wills.

At the hearing in a probate court of a petition for proof of an alleged will, the sole issue was, whether the signatures of the decedent and one of the attesting witnesses were forgeries. There was contradictory evidence on that issue. Upon an appeal by the petitioner from a decree disallowing the alleged will, it was *held*, that

(1) Evidence, offered by the petitioner, of "the state of mind of the decedent; that is, to show a plan, purpose or intention on the part of the decedent," including evidence of feelings of the decedent toward his relations and toward the petitioner and of declarations by the decedent as to his intention, was incompetent to prove proper execution of the will;

(2) Testimony, offered by the petitioner to contradict evidence introduced by the respondent, that the decedent had told the witness that he had been in a certain town at a certain time, alleged by the petitioner to have been the place and time of the execution of the will, was inadmissible at common law, and was not admissible under G. L. c. 233, § 65, since that statute does not apply at a hearing of a petition for the proof of a will;

(3) The admission of testimony by a witness for the respondent, that, upon the decedent's being told that the petitioner and his wife "mean to have some of your money," he replied "Never a cent. No, I pay . . . [the petitioner] for whatever he does," was erroneous, but, in the circumstances, the error did not prejudice the petitioner nor require that the case be remanded to the Probate Court;

(4) No error harmful to the petitioner appeared in the exclusion of evidence offered by him to contradict the testimony above described of the witness for the respondent.

PETITION, filed in the Probate Court for the county of Norfolk on January 9, 1929, for proof of an instrument as the will of Lora A. Littlefield, late of Brookline.

The petition was heard by *McCoole*, J., a stenographer having been appointed under G. L. c. 215, § 18, as amended. A decree was entered disallowing the will. The petitioner appealed.

*J. E. Swift*, (*J. B. Shea* with him,) for the petitioner.

*J. M. Russell*, (*C. R. Smith* with him,) for the respondent.

CARROLL, J. This case is before us on the appeal of Maurice J. Mahan from a decree of the Probate Court disallowing the will of Mrs. Lora A. Littlefield. The appellee, who contested the probate of the will, at the beginning of the hearing stated that the ground of his contest was that the alleged signature of the decedent was a forgery; that the signature of one of the witnesses to the will was also a forgery. The decree disallowing the will recited that the instrument was not the last will and testament of Mrs. Littlefield. The questions now presented relate solely to the exclusion of testimony offered by the proponent of the will and the admission of evidence against his objection. Before discussing these questions, the significant facts may be summarized. The evidence is reported.

Mrs. Littlefield lived in Brookline. She died on December 27, 1928. Maurice J. Mahan lived in Charlton. The will purports to be executed on July 14, 1925. It gave all of Mrs. Littlefield's estate to Mahan and his wife. The witnesses were Edward A. Lamb, Henry K. Davis and Lewis M. Capen. There was evidence that Capen's signature was forged; he died March 11, 1928. The proponent introduced evidence tending to show the execution of the will on the day of its date in the presence of Lamb, Davis and Capen; that in February or early in March, 1928, Mrs. Littlefield visited Charlton and a paper was then exhibited by her which she declared to be her will and was witnessed by the same witnesses. The proponent contended that it was supposed when the document was filed that it was the will of 1925.

It was his theory that Mrs. Littlefield after the execution of the 1925 will decided for some reason to make a new will and copied the form and date of the earlier instrument and obtained the attestation of the same witnesses in February or March, 1928.

The instrument offered for probate is upon paper bearing a 1928 watermark. This was not disputed by the proponent, he contending that the document was not the one signed in 1925 although it bore that date in two places — in the testimonium clause and in the attestation clause. The contention of the appellee on this point is that the proponent, after discovering the date of the watermark, invented the story that the decedent executed two wills. The document is written on a printed will blank of legal stationers and is numbered 601. There was evidence from which it could be found that the paper with the 1928 watermark was not printed as will blank number 601 until after June 22, 1928, and as the witness Capen died on March 11, 1928, his signature, the contestant contended, must have been forged. A State detective who was assigned to investigate the case testified that in February and March, 1929, when Lamb, Davis and Mahan were interviewed· they said nothing about a 1928 will — the witness Lamb said he signed only one will — and they made inconsistent statements. The detective was accompanied by a stenographer who took notes of the conversation. Standards of the handwriting of Mrs. Littlefield and of Capen were in evidence. There was testimony from handwriting experts offered by the proponent and the contestant. There was also testimony that the witness Davis on one occasion admitted that he had never seen Mrs. Littlefield since July 14, 1925.

As has been said, the controversy concerned the genuineness of the signatures of Mrs. Littlefield and the attesting witness Capen. No other question was presented by the contestant. Fraud, undue influence, mental incapacity were not involved.

As stated in the proponent's brief, he sought to intro-

duce evidence showing " the state of mind of the decedent; that is, to show a plan, purpose or intention on the part of the decedent." This evidence was excluded; the proponent excepted.

Statements made by a testator both before and after the making of the will are frequently received in evidence as tending to show his mental condition and feelings. Where the state of mind of the testator is in issue such declarations, if not too remote, are admissible; they are received not as evidence of the fact of undue influence but merely to show the state of mind. *Shailer* v. *Bumstead,* 99 Mass. 112. *Pickens* v. *Davis,* 134 Mass. 252. *Lane* v. *Moore,* 151 Mass. 87. *Neill* v. *Brackett,* 241 Mass. 534. *Brady* v. *Doherty,* 253 Mass. 518. Where the issue is forgery authorities are to be found which hold that declarations of the decedent are admissible. In this Commonwealth, however, the law is settled that declarations of a testator cannot be received to prove the execution of a will. Such declarations come within the hearsay rule and are inadmissible at common law and under the statute. G. L. c. 233, § 65. *Giles* v. *Giles,* 204 Mass. 383. *Brady* v. *Doherty, supra.* The Legislature requires that a will be attested by three witnesses. G. L. c. 191. Declarations of a decedent alleged to be the maker of a disputed document may be effective to show that the document was executed by him, and declarations by such a person of an intention or purpose to make such an instrument or an acknowledgment that the document is his may tend to show that it is genuine. But a written will must be executed according to the statute with the formalities required by law; it must be proved if possible by the attesting witnesses and, if this is impossible, by the best evidence obtainable. The evidence offered by the proponent was not excluded on the ground that it lacked probative value, but for the reason that such evidence, when the issue is forgery, would be unsafe and contrary to the established method of proving the truth of a will. Such evidence might weaken, if not destroy,

the safeguards required for the execution of such an instrument and a trial court should not be permitted to draw the inference from such testimony that the will is authentic. The question of the admissibility of declarations of the testator tending to show the due execution of the will was considered by Knowlton, C.J., with a full citation of cases, in *Giles* v. *Giles, supra.* The question was also considered in *Brady* v. *Doherty, supra.*

In a will controversy we have always adhered to the rule that the declarations of a testator are admitted merely to show the state of mind or feelings of the testator. They are evidence of mental acts or conduct and their truth or falsity is not material. Such declarations are not admitted to prove the actual fact of undue influence or fraud. *Shailer* v. *Bumstead, supra. Giles* v. *Giles, supra. Brady* v. *Doherty, supra.* The feelings of Mrs. Littlefield toward the proponent and her state of mind were not important and could not be considered on the question of the genuineness of her signature or that of the witness Capen. In our opinion, therefore, her declarations showing her intention, plan or purpose should not be received to support the proponent's contention that the will was signed by her and attested by Capen as one of the witnesses. *Giles* v. *Giles, supra. Throckmorton* v. *Holt,* 180 U. S. 552. *In re Kennedy,* 167 N. Y. 163. See *Stevens* v. *Stevens,* 72 N. H. 360. The judge properly refused to receive such evidence.

There was evidence tending to show that Mrs. Littlefield was not in Charlton, the town where Mahan lived, in February or early in March, 1928. The proponent then offered to show by a witness that the decedent told him in February or March that she had been to Charlton, and, by the same witnesses, offered statements by the decedent that she was very fond of Mahan and his daughters and had no affection for her relatives. Her declaration that she had been to Charlton was a statement of fact and under our rule was not admissible at common law. This evidence was not admissible under G. L. c. 233,

§ 65, because this statute does not apply to proceedings concerning the probate of wills; it has reference to an "action" and is not applicable in a hearing on the probate of a will to prove a fact. *Giles* v. *Giles, supra. Brady* v. *Doherty, supra.*

The decedent's statements of her affection for Mahan and her dislike for her relatives were also inadmissible; they had no relevancy to the question of the execution of the will. For the same reason her alleged declaration to the effect that Mahan would be in charge of her affairs on her death was excluded properly. There was further evidence offered of the same general nature; there was no error in refusing to receive it.

The contestant called a witness who, in direct examination, testified that she told the decedent that the Mahans "mean to have some of your money," to which Mrs. Littlefield replied: "Never a cent. No, I pay Mr. Mahan for whatever he does." The proponent excepted to the admission of this evidence. This evidence, we think, should have been excluded; but considering the issue involved the proponent was not harmed by its admission and his substantial rights were not affected. It had no bearing on the issue of forgery. An inspection of the handwriting of Mrs. Littlefield and that of the witness Capen, the testimony of experts, the fact that the watermark showed the year 1928, that the printed form was not sold until June of 1928, months after Capen died, with all the other evidence, tended to show the forgery of the instrument, and we cannot think that this testimony introduced by the contestant, even if the judge believed it, could have in any degree influenced him in his conclusion. The testimony is voluminous. The hearing occupied many days. A case of this kind should not be sent back to the Probate Court because of this harmless error.

What we have said applies also to the evidence offered by the proponent in contradiction of this testimony. The offered evidence could at most be received only for pur-

poses of contradiction. Evidence was offered by the proponent tending to show that in February or early in March, 1928, Mrs. Littlefield was in Charlton; that she was not at this time confined to her home by illness, as contended by the contestant. The evidence was immaterial and its exclusion was not harmful. *Shaw* v. *Stone,* 1 Cush. 228, 243, and *Mowry* v. *Smith,* 9 Allen, 67, 68, are not in conflict.

An examination of the reported evidence convinces us that the judge was right in finding that the instrument offered for probate as the will of Mrs. Littlefield was not her will. The evidence shows that her signature, as well as that of the witness Capen, was forged. The evidence offered to show her state of mind and indicating her plan, purpose or intention was not admissible. There was no harmful error in excluding evidence or in receiving the evidence of the contestant against the proponent's objection.

*Decree disallowing the will affirmed.*