**PETERS et al. v. PETERS.**

No. 6313.

United States Court of Appeals for the District of Columbia.

Argued April 1, 1935.

Decided May 6, 1935.

C. F. R. Ogilby and Richard E. Shands, both of Washington, D. C., for appellants.

Christopher B. Garnett, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is an appeal from an order admitting to record the will of Emmett Eugene Peters, after a caveat had been filed by two brothers and a sister of the decedent. The issue submitted to the jury was the following: "Was the said paper writing dated the 2nd day of April, 1917, purporting to be the last will and testament of Emmett Eugene Peters, deceased, executed and attested in due form, as required by law?"

To this query the jury answered, "yes." Only the two attesting witnesses were examined as to the execution of the will. One of these was a sister of testator, the other his niece. The former testified directly and positively to all the facts necessary in the execution of the will; the latter to all the necessary facts except the presence of testator when she and her aunt signed as witnesses.

The evidence shows that testator and his wife resided in Richmond, Va., where the will was executed in 1917.

On April 2 of that year testator and his wife made separate wills in favor of each other. The husband devised and bequeathed to his wife, if she should survive him, all of his property in fee simple; if she predeceased him, then to his sister, Lynwood Peters; the wife devised and bequeathed to her husband all of her property, should he survive her; and, likewise, if he should not, to *his* sister, Lynwood Peters. At the time of the execution of the wills, the testator and his wife were residing with his mother and his unmarried sister, Lynwood. Mrs. Peters died two years prior to the death of her husband, and her will was probated in 1931 and her husband took under it. The two wills were substantially identical and were attested at the same time by the same witnesses.

From what has been said, it will be seen that the only issue at the trial was whether the testator was present when the attesting witnesses signed. Mrs. Eanes (the niece—and the daughter of one of the caveators) testified that at the time she signed the paper as a witness she was nearly 17 years of age; that she had graduated from the grammar schools in Richmond, and was then a student in the high school; that Mrs. Peters (her aunt) asked her to sign both wills, and that Mr. Peters (testator) was not then present and she could not remember whether his signature was then on the paper writing. Interrogated as to the events preceding the signing, she said: "I was asked to sign by my aunt and my uncle and he said about my age and they said it was perfectly all right." When her attention was called to her statement that she was asked to sign by her aunt and her uncle, she corrected her testimony and explained, "I meant my two aunts when I said uncle." In a later part of her testimony, she made another correction. She had already stated that, although she knew she was signing her uncle's will as a witness, she did not know whether his signature was written on the paper when she signed it. Subsequently she stated that her uncle's signature was *not* on the will when she signed it, and that there was no signature above hers and the other witness.

We have, therefore, here a case in which one of the witnesses testifies under oath to all the circumstances required for the admission of the will to probate. The other repudiates the attestation clause and denies that the testator was present when the witnesses signed; and this question of fact the jury decided in favor of the validity of the will. In view of this and of the order of the court approving and confirm-

ing the verdict, it is only necessary to determine if, in the trial, there was prejudicial error, either in the admission or rejection of evidence or in the instructions of the court to the jury. We are satisfied there was no error in either respect.

■ Eight assignments are pressed. Number one is, "The court erred in striking the second allegation from the caveat filed herein." This allegation was: "The said deceased did not, at the time of making the subscription at the end of said paper writing, declare the said paper writing to be the last will and testament of him the said Emmett Eugene Peters."

The Code of the District of Columbia provides that all wills and testaments shall be in writing and signed by the testator, or by some other person in his presence and by his express directions, and shall be attested and subscribed in the presence of the testator by at least two credible witnesses (D. C. Code 1929, title 29, § 23). Appellants insist that the words "attested and subscribed" indicate different things—that to attest means to bear witness, to know that the paper which the witness signs is a will and is published and declared as such; while to subscribe the paper is only to write on the paper the name of the witness for the purpose of identification. Counsel say that, granted it is not necessary that the testator formally declare the instrument to be his will, nevertheless there must be some conduct on his part to apprise the witnesses that the instrument is a will, for otherwise there can be no attestation within the meaning of the statute. It is perhaps enough to say as to this that we have already held, in construing the District of Columbia statute, that it is not necessary to the effectiveness of the acknowledgment or the attestation that the witness know the nature of the instrument produced and submitted for his attestation. In re Porter's Will, 9 Mackey, 493, 503; Notes v. Doyle, 32 App. D. C. 413, 418.

But we need not in this case invoke this rule, for here there can be no real contention—in view of the evidence to which we shall refer—that both attesting witnesses were not informed that the paper writing which they signed as witnesses was Peters' will. The niece, on whom appellants wholly rely, states specifically that she knew that she was signing Peters' will as a witness, though she also states that Peters was not present. The truth of this statement,

therefore, was the vital point on which the case turned, and the trial court, in submitting that issue, specifically called attention to the contradictory evidence of the two subscribing witnesses and directed the jury to base their verdict upon their finding on that question. If both witnesses signed in the presence of the testator, obviously they acted on the request of testator to witness his will. We think, therefore, there is no merit in the assignment.

■■ Number two is that the court erred in striking the seventh allegation from the caveat. This allegation was: "The attesting witness, Mary C. Peters (now Mary Peters Eanes), was at the time she subscribed her name an infant niece of said deceased, and her act in signing as an attesting witness was utterly void and of no effect."

The ground of this is that the niece was both an infant and a possible heir of decedent.

It is not contended that an heir at law, not mentioned in the will, is not a competent witness to attest the will, but it is insisted that, because here there is involved a combination of infancy and adverse interest, the witness was incompetent. The theory is that because, under some circumstances, the niece might have been the heir of the uncle, she was attesting against interest, and, being an infant, she could not waive or destroy the beneficial interest which the right of blood created in her behalf; but we think there is nothing in the point. The interest or expectancy which will disqualify an attesting witness must be something more than the mere hope of succession to the property of another. An interest remote, contingent, and uncertain, is not enough. A residuary legatee whose interest is very remote is a competent witness. Galbraith's Lessee v. Scott, 2 Dall. 95, 1 L. Ed. 304; Lord v. Lord, 58 N. H. 7, 42 Am. Rep. 565; Warren v. Baxter, 48 Me. 193; In re Hoppe, 102 Wis. 54, 78 N. W. 183; Maxwell v. Hill, 89 Tenn. 584, 585, 15 S. W. 253.

In this case, when the niece subscribed and when the will was offered for probate, her father was still alive, and she had neither at the one time or the other a beneficial interest in her uncle's estate. No ground of mental incapacity is alleged, but the contrary is proved; and so we hold that the witness (niece), having no interest, surrendered nothing.

■ Assignment number three is that there was error in not permitting the niece to relate an occurrence which took place upon her return to her home after signing the two paper writings purporting to be the wills of Peters and his wife. The question arose under these circumstances—while the niece was testifying, and after she had told what occurred at the time the will was signed, she stated she remembered an event that happened on her return home and that the event fixed in her mind the fact that the signing was on Monday, rather than Sunday; and it is said that this is important because it is more likely testator was at home on Sunday than on Monday. But we cannot follow this reasoning, if for no other cause, because the record does not show what the witness intended to say or what incident she intended to recall. It is therefore impossible now to determine whether the proposed evidence was relevant or the refusal to allow it harmful. In Ricketts v. United States, 59 App. D. C. 47, 32 F.(2d) 943, 945, we stated the rule to be that where an exception alleges error in the rejection of evidence, the substance at least of the excluded evidence should be incorporated in the bill of exceptions. Here there is nothing which will enable us to say whether the testimony of the witness was of importance, and equally nothing to show that its rejection injured appellants. The rule is grounded on the fact that a judgment or decree ought never to be reversed for the rejection or the admission of evidence that could not, in the nature of things, affect the result, and even if we should indulge our imagination, we should be hard pressed to find any basis for reversal under the conditions we have outlined.

Assignments four and five will be considered together. Four is based on the refusal of the court to permit the niece to repeat a conversation she had with testator in Washington city, where she had gone to prove the will of his wife; five, to the action of the court in excluding the deposition of Daniel C. Peters, a nephew of testator.

An examination of the record shows that the niece came from Richmond to Washington at the request of testator to prove his wife's will; that she returned the same day and that testator took her to the depot. In the progress of her testimony, counsel for caveators offered to prove what the testator said to her when he put her on the train, but the court sustained an objection, on the ground that the statement was an unsworn declaration, not part of the res gestæ and therefore not relevant on the issue of the proper execution of the will.

■ As to four, it is only necessary to refer to what was said under three, for here, as there, it does not appear what testimony the niece was expected to give. And so, likewise, there is nothing by which we are able to see whether the tendered evidence was material, or that its rejection had any effect upon the result.

On the other hand, as to five, we do find the excluded deposition of the nephew in the record. It shows that after the death of Mrs. Peters, the nephew visited testator at his home in Washington on several occasions, and on one of these testator told him that he had been surprised to learn that Mrs. Eanes (the niece) was a witness to his wife's will, and also that he (testator) was not present when his wife made her will. The trial court refused to allow the deposition to be read. On behalf of appellants it is urged that the declarations of the testator were admissible, not as direct evidence, but as corroborative evidence; that is to say, as supporting the statement of the niece that the two wills were witnessed at the same time and the further statement that testator was not present when the witnesses attested his.

The reasoning is persuasive, for it is a fact that both subscribing witnesses agree that the two wills were attested at the same time. If, therefore, Peters was not present when the witnesses signed the will of his wife, the presumption that he was not present when they signed his will would reasonably follow; and there is undoubtedly a disposition on the part of many American courts to modify the hearsay rule and admit corroborative declarations of a testator where they have been preceded by direct proof as to the circumstances of the making of the will. See Beadles v. Alexander, 9 Baxt. (Tenn.) 604; Lane v. Hill, 68 N. H. 275, 44 A. 393, 73 Am. St. Rep. 591; Nixon v. Snellbaker, 155 Iowa, 390, 136 N. W. 223; Bridge v. Gray, 14 Pick. (Mass.) 55, 25 Am. Dec. 358. But we think that neither this tendency to modify the rule, or the reasons on which it is based, should weigh in the present instance. The statement of the testator which the witness repeated did not relate to the execution of testator's own will, but only to the will of his wife. At most, it was an expression of surprise that a particular person was an attesting witness of a will made 14 years before, and, relying upon his memory, he might well have said

he was not present; but to permit unsworn declarations of this character, for the purpose of annulling a solemn instrument complete on its face, would be to adopt a dangerous rule and to open wide the door to fraud and perjury. In short, to do more injustice than justice. Here, as we have shown, the genuineness of the testator's signature was not denied, nor was the genuineness of the attesting witnesses', and the only question was whether the testator was present when the two witnesses signed. To invite the jury to speculate on this issue on the basis of declarations of the deceased made 14 years after the event, and relating not to the will in question, but to another will, would be to break down the efficiency of the statutory provision and in the end lead to confusion rather than to the ascertainment of truth. As was held by Mr. Justice Washington in Stevens v. Vancleve, Fed. Cas. No. 13,412, nothing is more dangerous than to admit the declarations of a deceased prior or subsequent to the execution of a will either to control the construction of the will or to support or destroy its validity; and in approving that rule the Supreme Court in Throckmorton v. Holt, 180 U. S. 552, 573, 21 S. Ct. 474, 482, 45 L. Ed. 663, said: "The declarations are purely hearsay, being merely unsworn declarations, and when no part of the res gestæ are not within any of the recognized exceptions admitting evidence of that kind." No more is the excluded conversation to which we have referred, in the "recognized exceptions" for, as we have shown, there was here neither proof of suspicious circumstances or evidence of fraud or undue influence, and therefore nothing to make the exception applicable. Lipphard v. Humphrey, 209 U. S. 264 at page 274, 28 S. Ct. 561, 52 L. Ed. 783, 14 Ann. Cas. 872.

■ The remaining assignments (six, seven, and eight) are made to the granting and refusal of instructions. Appellants asked the court to instruct the jury that when an attestation clause is not read by or to a subscribing witness, the recitations in the clause are without weight; instead, the court instructed the jury that the signing by the witness of the "attestation clause" carried with it the presumption that the statements in the clause were true. If the court had stopped at this point, there might be room for argument, but the court also said that this presumption was not absolute and that it might be overcome by testimony to the effect that it was not true; and though the court added to this the warning that in such a case the evidence impeaching the due execution of the will should be received with caution, we think the instruction gave no more than appellee was entitled to, and was in all respects correct. Stevens v. Leonard, 154 Ind. 67, 56 N. E. 27, 77 Am. St. Rep. 446; In re Fletcher's Estate (1934) 147 Or. 139, 32 P.(2d) 123; Flynn v. Flynn, 283 Ill. 206, 119 N. E. 304, Ann. Cas. 1918E, 1034; Hutchison v. Kelly, 276 Ill. 438, 114 N. E. 1012; Rupp v. Jones, 289 Ill. 596, 124 N. E. 560, 562. Peters' will was a single-page instrument. An inspection of it shows clearly that it was impossible for any person of reasonable intelligence to have signed as a witness without realizing its character, but, in addition to that, the impeaching witness states that she was asked to sign the paper as a will, and that some discussion preceded her signing as to her qualifications by reason of age; that this question being resolved in favor of her right to sign, she got up from her chair, went to the dining room table, leaned over and signed her name, her aunt, the other subscribing witness, having previously in her presence signed. All of this occurred 16 years prior to testator's death. In circumstances like these, we have no reason to doubt it was proper to instruct the jury that the attestation clause reciting compliance with all the formalities required by the statute, admittedly signed by an intelligent witness, should be held to be prima facie evidence of the execution of the will. The instruction went no farther than that. It told the jury, in so many words, that the presumption should not bind them if they were satisfied of the truthfulness of the evidence of the witness that the testator was not present when she signed as witness; but that in considering her testimony in that respect, it should be received with caution. This is no more than saying that a will properly executed, containing admittedly genuine signatures both of testator and witnesses, will be presumed to have been lawfully executed, and that to overcome the presumption clear and satisfactory proof is necessary. Particularly is this the case where the provisions of the will are reasonable and just and where there is no evidence of fraud or unfair dealing. 1 Redfield on Wills (4th Ed.) 238.

On the whole case, we are of opinion that the order below was correct, and should be, and therefore is, affirmed.

Affirmed.