[Civil No. 4573. Filed March 1, 1943.]

[134 Pac. (2d) 701.]

In the Matter of the Estate of ETHEL ROSE WELCH, Deceased; HELEN LILLIAN WELCH and ARTHUR JAMES WELCH, Appellants, v. C. WAYNE CLAMPITT, Administrator with the Will Annexed of the Estate of Ethel Rose Welch, Deceased, Appellee.

 █

Messrs. Cusick & Lyons, for Appellants.

Mr. Arnold T. Smith, for Appellee.

ROSS, J.—The question we are to decide is whether the deceased Ethel Rose Welch left a valid will. If she did, her wishes as to the disposition of her property as therein expressed are controlling, otherwise her property will descend according to this state's laws of descent.

Deceased was murdered in her home, located at 823 W. Congress Street, Tucson, Arizona, some time during the night of September 12, 1941. The following morning a police officer, of Tucson, made an examination of her home, which consisted of three rooms. The middle room was used as a kitchen and bath and the back room for sleeping purposes. He stated that in both of these rooms the furniture and things were disarranged and scattered about; that her body was in a clothes closet in her bedroom; that in the front room "things were very orderly and neat and clean." In a desk in this room the officer found a legally executed will by deceased, properly witnessed, dated Chicago, March 29, 1932, and an unexecuted and undated one (probably written in Tucson) changing the executrix and some of the legatees. Both the executed will and the unexecuted one were torn in two, the tear being lengthwise and near the center of the sheet of paper on which each was written.

The estate consisted of personal property valued at $500 and the proceeds of insurance policies, payable to the decedent's estate, valued at approximately $3,000. The instrument, which we shall call the will, disposed

of decedent's property to her sister Helen L. Welch, her brother Arthur James Welch, her grandfather Arthur Henry Welch and to Marie Dufault (no kin), a long-time intimate friend and companion. Helen L. Welch was named therein as executrix. If the will is sustained, the legacy left therein to Dufault and the grandfather would lessen the amount going to the heirs at law, the sister and brother. The contest is over the legacy to Dufault and the grandfather and is between the administrator with the will annexed, Clampitt, and the heirs at law. The grandfather is taking no part in the controversy. The administrator with the will annexed seeks to sustain the will, while the heirs at law contend decedent left no will but died intestate.

Upon the assumption that decedent died intestate, the heirs at law requested the court to appoint Honorene M. Parker administratrix, which was done November 12, 1941, and thereafter she qualified and entered upon the duties of her office.

March 17, 1942, appellee Clampitt filed a petition for the probate of the above described instrument as the last will of decedent, for his appointment as administrator with the will annexed and for revocation of the letters of administration issued to Parker. This petition was resisted, under section 38–210, Arizona Code 1939, upon the grounds above indicated, that is, that Ethel Rose Welch died intestate. However, after a trial extending through June 9, 10 and 11, 1942, during which a full hearing was had and considerable evidence taken, the court took the case from the jury and admitted said instrument to probate, appointed Clampitt administrator with the will annexed and issued letters to him, and revoked the letters of administration theretofore issued to Parker.

The appellants, the sister and brother of decedent, being dissatisfied with the court's rulings during the trial and especially with its ruling sustaining the will,

have appealed. We shall in the course of this opinion refer to them as contestants and to the administrator with the will annexed as contestee.

The contestants first complain of the admission of the depositions of the subscribing witnesses to the will and of the attesting notary public, on the ground that no notice of the taking of such depositions was given to them, or the administratrix, or her attorneys. At the time the commission to take the depositions was issued (March 17, 1942) and at the times of their taking, no one had appeared to contest the will. The record shows that the heirs named in the will, one of whom was named executrix, were given notice of the hearing of the petition for probate of the will, as provided in section 38-207; that no contest of the will was filed until April 10, 1942, and that no protest against the use of the depositions was filed until the day of trial, June 9, 1942. The statute governing the taking of depositions of subscribing witnesses, section 38-209, was followed and the objection to their use was properly disallowed. The new Rules of Civil Procedure, Rule 27 (a) (1), (2) and (3), now sections 21-710, 21-711 and 21-712, that provide ways of perpetuating the testimony of persons for future use under the circumstances therein enumerated, as an inspection thereof shows, have no reference to the evidence in a pending action, and contestants' reliance thereon to sustain their contention that they were entitled to notice of the taking of the depositions is without merit.

The claim by contestants that it was error for the court to refuse to appoint Honorene M. Parker as administratrix with the will annexed upon their request, we next consider. Contestant Helen L. Welch was named in the will as executrix, but not being a resident of Arizona she was not competent to serve. Section 38-302. If she had been competent to act as executrix, it was her duty under the statute to petition for

letters within 30 days after she knew of decedent's death, which she did not do. Such delay is, under the statute, a renunciation of the right to have letters and authorizes and empowers the court to "appoint any competent person administrator with the will annexed." Section 38-204. We think, in view of the fact that Helen L. Welch contended that the decedent died intestate, it was not error or an abuse of discretion for the court to refuse to appoint the person nominated by her.

We now revert to the vital question propounded at the beginning of this opinion. It is not seriously contended that the instrument submitted to the court was not legally and formally executed as the last will and testament of the decedent and in conformity with section 41-102. We accept it as such. The question then is, was it revoked by the testatrix. Section 41-103, or so much thereof as is pertinent, reads as follows:

"No will made in conformity with the preceding section, nor any clause or devise therein, shall be revoked except by a subsequent will, codicil or declaration in writing executed with like formalities, or by the testator destroying, canceling or obliterating the same or causing it to be done in his presence . . . ."

The unexecuted will found with the executed one disposed of the decedent's property in equal portions between Helen L. Welch and Marie Dufault and appointed the latter the executrix thereof. If this last instrument had been executed by the decedent with the formalities required by the statute, it would have been a revocation of the first will.

The question is, did the decedent tear the will into two pieces and if so did she do it with the intention of revoking it. The circumstance of the pieces being found in decedent's desk with the pieces of the unexecuted will, if unexplained, might justify the inference that she had torn them thus with the intention of chang-

ing the legatees or revoking the will, but the trouble with such inference is that the facts upon which it is based will also permit the inference that, since others possibly had access to the desk containing such instruments, someone besides the decedent did the tearing of the will, in which event its efficacy as the will would not be affected. On the question as to who tore it and why, the court heard the testimony of contestant Helen L. Welch in the absence of the jury and thereafter excluded such testimony. The contestants complain of the order of exclusion.

At the trial this witness testified that on August 13, 1941 she and her former mother-in-law, Mrs. Codis, and a Mrs. Corber, who were her passengers, reached Salt Lake City, where they met Ethel (decedent); that at that time and place she and Ethel had a conversation in which the former said:

"She (Ethel) said, 'Helen, when Marie telephoned for her insurance policy I was so angry,' she says, 'I am going'—wait a minute now—'was so angry that I tore up the will.' "

Whether her passengers, as she called them, heard this conversation is not shown. She said they were dressing and were in and out of the room all the time. In a deposition taken in Chicago, one April 25, 1942, she testified concerning the same meeting:

"Q. You have no way of knowing when that will was torn? A. Yes, my sister told me she was going to make a new will in Salt Lake, the time I saw her on my vacation in 1940. She told me she was going to make a new will as soon as Marie left. She did not tell me what provision she would put in the new one.

"Q. Was anybody else present at the time your sister said that to you? A. No, no one was present."

The date "1940" was evidently a slip of the tongue, for there was but one meeting in Salt Lake City, which was on August 13, 1941, one month prior to testator's death.

■ As above indicated, without the offered testimony there is no way of knowing who tore the will nor why. If it is admitted, it would still be a question for the triers of the facts. Here, as should always be the case, the endeavor of the court is to find out and sustain the intention of the decedent with reference to the disposition of her property. The rules of evidence in aid of such endeavor are not uniform and vary with the varying circumstances. We think they all recognize the right of a person possessing a disposing mind to make a disposition of his property by will; also his right to change his will, or destroy it, at any time before his death, if it is done in a way to indicate with reasonable certainty that intention.

■■ If there is evidence that will throw light upon the act of tearing the will or explain it, such as that it was an accident, or that it was not done with the intention of revoking it, or that it was done with the intention of destroying it, such evidence is admissible under a long line of decisions. In the annotation to *Compton* v. *Dannenbauer,* 120 Tex. 14, 35 S. W. (2d) 682 in 79 A. L. R. at page 1503, it is stated:

"The weight of authority is to the effect that declarations of the testator, although not made at the time of the alleged act of revocation by mutilation, cancellation, or destruction of the will, are admissible to show the intent with which the testator performed such act, and so to support or negative the proposition that the will was thus revoked. This rule is supported by the following cases, in the majority of which it appears that the declarations were subsequent to the alleged revocation: . . . "

To sustain this proposition there is cited a number of cases from courts of the highest repute for ability and learning. Other cases sustaining the admissibility of declarations of a testator showing why and by whom his will was torn or mutilated are: *In re Anderson's*

*Estate,* 114 Wash. 591, 195 Pac. 994; *Hull* v. *Cartin,* 61 Idaho 578, 105 Pac. (2d) 196; *In re Thompson's Estate,* 44 Cal. App. (2d) 774, 112 Pac. (2d) 937; *In re Flood's Estate,* 47 Cal. App. (2d) 809, 119 Pac. (2d) 168; *Goodale* v. *Murray,* 227 Iowa 843, 289 N. W. 450, 126 A. L. R. 1121; Wigmore on Evidence (3rd. Ed.), Vol. VI, page 117, par. 1737.

In *Re Roeder's Estate,* 44 N. M. 429, 103 Pac. (2d) 631, 635, it was said:

"Confirming the trend toward greater admissibility of statements of this nature, we quote from Corpus Juris: 'While the majority of the early cases is against the admissibility of the declarations, the modern tendency is to enlarge, rather than restrict, the matters as to which the declarations are admissible, *at least where the declarations are corroborative of other evidence.*' 68 C. J. 1004, Sec. 774. (Italics supplied).

. . . . . . . . .

"Of similar import is the following statement by the Kentucky court: ' . . . no reason is perceived why declarations of an intention to revoke, followed by the act, as well as declarations subsequent to the act that the act had been performed, are not admissible in corroboration of other evidence to show both the act by the testator and the intent with which it was done. Indeed such is the prevailing view on the question.' *Stuart* v. *McWhorter,* 238 Ky. 82, 36 S. W. (2d) 842, 844 (and cases there cited).

"We conclude that the evidence to be drawn from the physical facts in the case at bar is sufficient to raise the issue of the genuineness of the will and that the interests of truth and justice demand that we adopt the view that the testator's declarations were properly admitted."

The trial court ruled such evidence out because of conflicts in the statements of the witness on the two named occasions. On the witness stand she testified decedent said among other things: "I tore up my will" and in her deposition she testified that decedent told her she was going to make a new will but said nothing

about her having destroyed her will. These two statements are not inconsistent.

We believe the evidence should have been admitted leaving its weight and probative value to the triers of the facts.

Section 23–105, prohibiting certain parties from testifying in actions "by or against executors, administrators or guardians" and "actions by or against the heirs, devisees and legatees or legal representatives of a decedent arising out of any transaction with such decedent," is not applicable to a proceeding to probate a will. In *re Miller's Estate*, 31 Utah 415, 88 Pac. 338, the court considered a similar statute and held that it does not apply to a suit contesting a will between the heirs at law and the devisees or legatees under the will. After citing a number of cases the court there said (at page 345 of 88 P.):

"These authorities, and others which can be cited, hold that the controversy such as here is between living parties, who, on the one side, are the devisees or legatees under the will, and on the other, the heirs at law of the testator. The former claim to take the estate under the will, the latter, under the statute regulating the descent of estates, insisting that the alleged will is a nullity. The act of the testator in making the alleged will is the only subject-matter of the investigation. The estate of the testator is not interested. The interests of those claiming to succeed to it either by operation of law or by operation of the will are alone involved. The estate remains intact and undiminished whatever may be the result of the controversy, and the subject-matter of the investigation is not a transaction with nor a statement by the decedent. As to such an investigation, the parties to the suit and those interested in the result thereof are upon terms of equality in regard to the opportunity of giving testimony. . . . "

To the same effect, see: *In re Anderson's Estate, supra; In re Findley's Estate,* 199 Wash. 669, 93 Pac. (2d) 318; *In re McCoy's Estate,* 91 Utah 212, 63 Pac. (2d) 620.

We conclude that the limitations of section 23–105, *supra,* have no application to a case of this kind, where the evidence offered is in explanation of acts of the decedent showing, or tending to show, a revocation of her will.

We think under the evidence and the law the question as to whether decedent tore her will with the intention of revoking it should have been submitted to the jury and that it was prejudicial error for the court to take that question from the jury.

Accordingly the judgment is reversed and the case remanded with directions to grant a new trial.

McALISTER, C. J., and STANFORD, J., concur.