**CHENOWETH v CARY, Admr.**

Ohio Appeals, 2nd Dist, Madison Co

No. 140.   Decided April 18, 1939

Crabbe & Tootle, London, for appellant.

Ralph G. Martin, Columbus; Robert E. Gibbs, Columbus, for appellees.

## OPINION

By GEIGER, J.

This matter had its inception in the Court of Common Pleas of Madison County, Ohio, being an action in which it was sought to set aside the alleged last will and testament of one Francis Marion Jones, a resident of Madison County, who died on February 22, 1936.

In the amended petition Louise Watson Chenoweth was plaintiff and Charles F. Kohler and his wife, Nellie Kohler, together with the heirs at law of both Francis Marion Jones, the testator and of his deceased wife, Sarah E. Jones, were parties defendant.

It is alleged that Francis Marion Jones died on the 22nd of February, 1936, possessed of an estate; that on the 12th of June, 1937, a paper writing purporting to be a copy of his last will, bearing the date of October 23, 1933, was admitted to probate by the probate court. After reciting the parties and their interests, it is alleged that said paper writing is not the last will and testament of Francis Marion Jones.

The court, under the statute, ordered that the following issue of fact be submitted to and tried by the jury,

"Is the writing produced the last will and testament of Francis Marion Jones, deceased?"

The issue was entered upon the journal. Thereupon the case was tried by a jury which returned a verdict that the paper writing, purporting to be a copy of the last will and testament of Fran-

cis Marion Jones, was not his valid last will and testament.

Martin P. Carey, Administrator c. t. a. of the estate and Charles F. Kohler and Nellie Kohler, defendants, moved the court for a new trial on the usual grounds, among them being, that the court erred in overruling the motion of defendant for a directed verdict at the termination of plaintiff's case, at the termination of defendants' case and at the termination of the testimony.

On the same day the same parties moved the court for judgment in their favor and to sustain the will as the last will and testament of Francis Marion Jones, notwithstanding the verdict of the jury. The court, upon a hearing of these two motions, sustained that for judgment non obstante veredicto, the court finding upon the evidence received that the defendants Charles F. Kohler and Nellie Kohler, and Martin Cary, Administrator, are entitled in law to a judgment in their favor. The motion for new trial was overruled. The plaintiff gave notice of appeal to this court and the case is here for our consideration.

The plaintiff, appellant, for her assignment of errors says, in substance, that the judgment is contrary to law in that the motion of the defendants, the administrator and Charles F. Kohler and Nellie Kohler, for judgment notwithstanding the verdict was erroneously sustained and that the paper writing was erroneously adjudged to be the last will and testament of Francis Marion Jones and that the judgment is not sustained by the evidence.

### THE FACTS

There are some unusual circumstances connected with this action. Briefly, Mr. and Mrs. Jones were childless, elderly people residing in a small village of Madison County, Ohio. In 1931, through their local attorney, each made a will in favor of the other. On behalf of the defendants, Mr. and Mrs. Kohler, testimony was introduced tending to show that on the 23rd of October, 1933, the decedent, Francis Marion Jones, and his wife, each made a will

giving their property to the other during natural life and after their death to Mr. and Mrs. Kohler in fee simple.

After the death of the husband and the later death of the wife, a search was made for the wills and the same were not found. Thereupon an application was made to the probate court by Charles F. Kohler and Nellie Kohler, representing that Francis Marion Jones died on the 22nd day of February, 1936, and that on the 23rd day of October, 1933, he had made and published a last will and testament, being duly signed and attested by Katherine Stouffer, George L. Avery and Ralph G. Martin, all of Columbus; that said will was in existence and unrevoked at the death of the said Francis Marion Jones but that subsequent to his death the same was lost or destroyed and can not be found. There was exhibited what is alleged to be an exact copy. Thereupon this application came on to be heard and the evidence of the three witnesses to the will was taken to the effect that the will was properly executed by the testator on the date in question, and that at said time the testator and his wife destroyed or caused to be destroyed certain other wills. After the wills had been executed, Mr. Ralph G. Martin, an attorney acting for the Kohlers, took possession of the new wills in order to keep them for the testators, who stated that they had no good place about the house, further stating that they could put them in their safety deposit box but would as soon that the attorney had them. Thereupon the attorney placed them in his pocket and took them to Columbus and kept them for a period of six months, when Mr. Kohler called the attorney, stating that he had been over to see the Joneses and that they had requested that they see the wills and have them back. Thereupon they were turned over to Mr. Kohler and passed out of the custody and control of the attorney, who had no knowledge of what happened, except from hearsay, stating, however, that the purpose of the Kohlers in getting the two wills was to deliver them back to the Joneses. The attorney further stated:

"And I think now Mr. Kohler told me (Martin) Mrs. Jones had a safety deposit box and that she thought that she would put them in the safety deposit box in London."

Two witnesses, Jacob Beathard and his wife, were produced at the hearing for the probate of the copies and later at the trial who testified, in substance, that on the Sunday after the death of Mr. Jones they were present with the widow in her kitchen. A bright fire was burning in the range. The widow inquired of Jacob Beathard as to whether she could sell the property and thereupon he asked to see the will of her deceased husband, which the widow produced and when Mr. Beathard had read the same he told her that she had only a life estate and the property went to the Kohlers and she could not sell the property. Thereupon she raised the stove lid and threw both wills into the fire stating, "I will see whether I can sell this farm or not." Both witnesses testified that the copy produced in court was a copy of the will they saw burned by the widow after the death of the testator.

The three witnesses to the will all testified that the copy offered was an exact copy of the will which each had witnessed in 1933. As a matter of fact it appears to have been a carbon copy.

After the death of Mr. Jones and his widow, Mr. Martin, attorney for the Kohlers, came to London to consult with those who had acted as local attorneys for the Joneses in an attempt to find the original wills. These two attorneys, Frank J. Murray and James F. Bell, both testified to the effect that Mr. Martin and Mr. Kohler came to their offices to consult them in relation to the will of Francis Marion Jones and that Mr. Martin, in the presence of Kohler, asked each if the Joneses had ever been to their office to execute their wills. Mr. Murray testified that Mr. Martin told him that Mr. and Mrs. Jones had been to his office and that he had drawn up wills and that they, the Joneses, told him they would bring them to London and show them to their

attorney and if satisfactory, they would execute them and his problem was to find out whether they had been executed. He states that Ralph G. Martin, whose name appears as a witness and who testified in the probate of the copy was the attorney who called upon him. The application for probate of the copy was made in January, 1937.

Mr. Bell, the other attorney, who later became Judge of the Court of Common Pleas, stated that he wrote a will for Francis Marion Jones and his wife on December 22, 1931, which wills were executed at his office and left in his custody until October 16, 1933, when they were taken away by Mr. Jones. Carbon copies were offered in evidence. Judge Bell stated that he had a letter from Mr. Martin relative to a lost or destroyed will, which later was produced and offered as Exhibit 3. This exhibit is a letter from Ralph G. Martin, under date of December 14, 1936, in which he states:

"On October 20, 1933, I prepared two wills, one for Francis Marion Jones and the other for Sarah E. Jones. Each will created a life estate in the other with the remainder to Charles F. Kohler and Nellie Kohler, his wife, of this city. Prior to that time, at the request of Mr. Kohler, I had interviewed both Mr. and Mrs. Jones at their farm and determined their wishes in regard to their property. After drawing the wills I returned but they stated that they wanted to have their attorney in London pass on the matter. I now understand that you either prepared new wills or had the wills which I prepared executed sometime in the latter part of 1933. You probably know that Mr. Jones died last February and Mrs. Jones died this month. I had been under the impression that these wills were executed and would take effect on their death. I would appreciate it very much if you would advise me of your recollection in regard to this matter. I would like to know whether or not the wills which I drew were executed or whether new ones were executed and whether you have copies of these wills. I would also

like to know who witnessed the wills so that they can be interviewed."

On hearing the application for the probate of the copies of the lost will Mr. Martin and the other two witnesses testified as to the signing and witnessing of the will. On October 20, 1933, Mr. Martin stated that he had prepared the wills of both Mr. and Mrs. Jones in Columbus, after a prior interview with them in their home in Madison County, and testified to the destruction of the old wills on the same afternoon. Mr. Martin in explanation of the seeming contradiction between his statement that the wills had been signed and witnessed by him and two other witnesses and his actions in making an inquiry of the London attorneys as to whether the wills had been signed and to explain the contents of his letter making like inquiries, stated that he was confused when he talked to the London attorneys; that he remembered about the Joneses saying they wanted to consult somebody about something in London, but that the reference that confused him was to the old wills; that when he talked with Mr. Avery, another witness, Avery was very clear about the details which brought everything back to Mr. Martin's mind, but at the time he was in London he was confused about it; he stated that he recalled the conversation he had had with the two attorneys in reference to the execution of the will; that Mr. Kohler was with him (who was in the party when the original will is said to have been signed and witnessed on October 23) and heard the conversation and Mr. Martin's statement that their chief difficulty would be to prove that these wills were ever signed and witnessed. Mr. Kohler did not say anything and was as much in the dark as to a recollection of the transaction as Martin. Mr. Martin recalled that in the presence of Kohler he stated that he had prepared the wills in his office and had given them to the Joneses because they said they wanted to take them to London to submit to their attorneys and that he, Martin, had stated that the Joneses

held the wills and that he had never seen them afterwards. All of which statements were heard by Kohler without attempting to correct them.

Mr. Martin was not a witness at the trial but the letter in question was introduced.

During the trial, Mr. P. D. Converse, a friend and neighbor of the decedent, and justice of the peace, testified that on November 2, 1935, he had a conversation with Mr. Jones. The testimony of Mr. Converse appears on page 22 of the record. He testified that Jones then stated he had no will; that he had had a will in favor of Kohler but he had destroyed it, Jones stating, "I have cut Kohler out, I destroyed the will and notified him to return the copies of the will, that he wouldn't get anything further from my estate."

Another witness, Henry Emrick (Bill of Exceptions, page 40) testified that the testator, some four to six weeks before his death, said, "they had made a will to Kohlers, and he says we got the wills back, he says I am awful glad we found what they were after before it was too late."

## THE STATUTES

Sec. 10504-35-39 in reference to lost wills provides that the probate court may admit to probate a last will and testament, which it is satisfied was executed according to the provisions of law and not revoked at the death of the testator, when such original will was lost subsequent to the death of the testator, if testator's lack of knowledge of the loss can be proved by clear and convincing testimony and it can be produced in court in as complete a manner as in the case of an original.

It is provided that the testimony of the witnesses to such lost will shall be reduced to writing and filed. It is further provided that if, upon proof, the court is satisfied that such last will and testament was executed in the mode provided by law, that it was unrevoked at the death of the testator and has been lost or destroyed since his death, if his lack of knowledge of such loss can be proved by clear and

convincing testimony, such court shall establish the contents of such will as near as can be ascertained and the contents of such will shall be effectual to pass real and personal estates and for all other purposes as if the original will had been admitted to probate and record and such will shall be governed by the laws in force relating to other wills.

Sec. 10504-47 provides how a will may be revoked by tearing, cancellation or destroying, etc.

Contesting of wills is provided for in §12079 et seq.

Sec. 12082 provides that the issues must be made up whether or not the writing purported is the last will or codicil of the testator which shall be tried by a jury whose verdict shall be conclusive unless a new trial be granted or the judgment be reversed or vacated.

Sec. 12083 provides on the trial of issue the order of probate shall be prima facie evidence of the due attestation, execution and validity of the will or codicil.

Sec. 12085 GC and other sections provide for the conduct of trial and appeal.

The court below in sustaining a motion for directed verdict and overruling the motion for a new trial states that the only evidence presented by the plaintiff upon the issue of the revocation of the will was the testimony of Converse to the effect that the testator had told him he had destroyed his will. The court states that declarations of the testator as to revocation are only admissible as part of the res gestae to confirm or rebut some act of revocation and that the declaration of the testator as detailed by the witness was no part of the res gestae and no act of revocation was shown which the same could have supported and that no presumption of revocation arose and there was no evidence that the will in question was known to have been in testator's custody or that it could not be found after his death and that the rule laid down in the Behrens case (47 Oh St 328) has no application and that the court should not have permitted the evidence of the witness, Converse, con-

·cerning the declaration of the testator and that there being no.evidence of revocation other than the declaration of the testator the motion of the defendant for a directed verdict should have been sustained and the court holds that the motion for a new trial should be overruled and the judgment for defendants be entered notwithstanding the verdict.

The position taken by the court brings us face to face with the case of **Behrens v Behrens, 47 Oh St 328.** The testimony of Mr. Converse and Mr. Emrick has already been detailed. The case, last cited, holds that where the probate court has found and established the contents of a lost will, that the order of probate is prima facie evidence of its due attestation, execution, validity and the contents of the will and that the burden of proof will be on the contestant to invalidate such will.

"2. When a will once known to exist and to have been in the custody of the testator can not be found, after he is deceased, the legal presumption is that it was destroyed by the testator with the intention of revoking it.

"3. To strengthen this presumption, it is competent to prove the declaration of the testator, after making his will, that he had destroyed or intended to destroy the same."

The plaintiff submitted special instruction No. 1, substantially embodying this holding of the court, but the court refused to give the special instruction and gave nothing in his general instruction relating to the matter. Had the verdict of the jury supported the will, it is possible that the refusal of the court to give this instruction would have been prejudicial error, but where the jury decided as it did, in favor of the one asking the instruction, no prejudicial error arises from its refusal.

The case of **Behrens v Behrens, 47 Oh St 328,** assumes an importance that calls for a careful reading by counsel. We shall examine it in such detail as shall exhibit its important features and in doing this, we shall announce its principles, whether from the original statement of the court or from approved quotations from cases cited by the court. We have already given the syllabi. We will emphasize those statements which we think of special importance.

The action was to contest the validity of a lost or destroyed will, destroyed after the death of the testator. The probate court being satisfied that the testator duly executed his will and died and that said will was not revoked by the testator but had been lost or destroyed subsequent to his death, found the contents of the will and admitted the copy to probate. The petition alleged that the will was not correctly stated by the probate court; that undue influence was used; ·that the testator, during his lifetime, destroyed the will with the intention of revoking it. On the trial the evidence was mainly directed to the question, whether the will was destroyed before or after the death of the testator. The plaintiffs gave in evidence the declarations the testator made to several persons during the summer and fall before his death, he having died on the 28th of November, 1884. One witness testified that in the forepart of the summer the testator remarked that he would or had put his papers in the stove and burned them up, referring to his will. Three others testified as to what· he said in reference to the distribution of his property among his children but did not testify as to any statement made to them as to the destruction of the will. Another witness referred to the conversation with testator in March, 1883, a year and a half before his death. He showed the will to this witness who stated that he read it and did not think that it was made right and that the testator said he thought so himself. In 1884 the witness had another talk with testator who then stated "I have burned that will and they will all go in equal shares now" (referring to his children).

The jury returned a .verdict for the plaintiff, finding that the will was not

the last will of the testator. A motion for new trial was filed and overruled and on petition in error the Circuit Court reversed the judgment of the Court of Common Pleas.

With this statement of the case we pass to the decision of the court, which, as before stated, we will consider in narrative form. It was conceded that the testator in 1882, executed his will in due form; after his decease in 1884, it was discovered that his will had been lost or destroyed and the question arose whether the will was lost or destroyed prior or subsequent to the death of the testator, and if before his death, whether or not it was destroyed by the testator himself with the intention of revoking. The court points out the statute in reference to the effect of an order of probate as prima facie evidence. In assuming the burden of establishing by preponderance that the will was not the last will of testator it becomes material for contestant to prove that the will was not in existence at the time of his death but had been revoked by testator. If the will did not exist at the time of the testator's death and had been destroyed prior to that time it could not be established as a will of which the original had been lost subsequent to the death of the testator.

What, if any conclusion of law or presumption arises from the fact of the non-existence at the time of the testator's death of a will proved to have been made and executed? The trial court charged, in substance, the presumption is that if a will be not found after the death of the alleged testator, it was destroyed with the intention of revoking it. This presumption may be strengthened by the declaration made by the testator before his death to the effect that he intended to destroy the will and if you find that the will was not in existence after his death you are at liberty to believe from this fact alone that the said will was destroyed with the intention of revoking and you may consider as strengthening this presumption any declaration made by testator that he would destroy the will or

had destroyed it. The court states that in giving the instruction to the jury and in admitting in evidence the declaration of the testator as to destroying his will, we find no error for which the judgment should be reversed.

It may be assumed that a will is kept in the custody of the testator himself to be modified or revoked according to his good pleasure. If, at his decease, it cannot be found, it is more reasonable to presume that he himself has destroyed his will than that some other person has committed the crime and incurred the penalty of secreting or destroying it. Legal presumptions are founded upon the experience and observation of jurists as to what is usually found to be the fact resulting from any given circumstances and the result being ascertained they are prima facie evidence of the facts presumed. The court approves the statement made by a judge that,

I have no doubt that five wills, made with all due formality, have been destroyed by the testators either in secret, or when no one was present to be a witness to prove the fact, to where there has been one destroyed or suppressed by fraud, or lost by time or accident, before the death of the testator.

It is a principle of universal acceptance in English and American Courts that **where a will is proved to have been once executed and the testator retained custody of it or had ready access to it, and it cannot be found after his death,** a legal presumption is raised that the will was destroyed by testator with intention of revoking. When a will previously executed can not be found **after the death of the testator** there is a strong presumption that it was revoked by destruction by the testator and **this presumption stands in the place of positive proof.** Such a presumption of revocation may be overcome by circumstances or other proof and by showing that the testator **had**

no opportunity to revoke and that his will was destroyed after his death.

While the declaration of the testator may be used to weaken the presumption that he had destroyed his will, his declaration may also be received as evidence to strengthen and fortify the presumption that he has destroyed his will with such intention. Whether it be in making of a will or the destroying of one, the competency of the testator's declarations as evidence is alike in each case and for the same reason admissible. Evidence of declaration not to adhere to the will is admissible to contradict the evidence of adherence. A declaration by a testator that he has burned his will is admissible, not as evidence of the fact of destruction but of evidence of intention. A statement by a testator that he has altered his mind as to the distribution of his property and that he has therefore destroyed his will, although it may not be evidence of the fact of destruction of the will, is evidence of intention from which the fact of destruction may be inferred, there being other circumstances leading to the same conclusion.

To aid in determining the question of revocation and not as separate and independent evidence of a revocation, the declaration of the testator that he had destroyed the will is competent evidence.

Parol evidence as to the declaration of the testator is admissible, made at any time between the making of the will and death of the testator.

If from being clothed with power to destroy his will, the presumption arises, after his death, that he destroyed it, that presumption will be aided by his declaration as expressive of his intention. The declarations of a testator are admissible to strengthen the presumption of revocation and to show that the will was destroyed for the purpose of revoking. The invariable rule in the courts of England is to admit the declaration of the testator, either to strengthen or to repel the presumption of revocation after the death of the testator arising from the non-production of the will or to explain the act of

destroying or canceling. Declarations alone might not be sufficient, but they are competent and it would be for the jury to determine whether they, together with other facts, proved the testator's revocation. To reject the declaration of the testator involves almost an absurdity and they are received, not on the ground of their being part of the res gestae, for whether they accompany an act or not, whether made long before or after making the will is entirely immaterial as to their competency. The circumstances only go to their weight or credit.

No claim is made that a will may be revoked by the mere declarations of a testator or otherwise than a mode prescribed by the statute. Where a legal presumption is raised upon the decease of the testator that he destroyed his last will in the statutory mode with the intention of revoking it, it is obvious that while his declarations may be admitted as evidence toward rebutting the presumption of the destruction and revocation before his death, they may with equal good reason be received as evidence to support and strengthen the presumption. See **Kennedy v Walcut,** 11 Oh St 442, 6th syllabus.

Upon consideration of this case and cases of similar import and it appearing that the alleged will could not be found after the death of the testator, we arrive at the conclusion that the testimony of both Converse and Emrick was competent to be considered by the jury in arriving at a conclusion as to whether the will had been destroyed by the testator for the purpose of revocation and that the court was wrong in refusing to give the charge asked for by the plaintiff which was, however, as we have pointed out, not prejudicial for the reason that the jury found in favor of the plaintiff.

In the case at bar another question, which has not been touched upon, is, we think, of importance. In most of the cases which we have examined the copy of the will was sufficiently established and no attack made upon that. In our present case carbon copies of the

will were offered and received and established as the last will. Of course, these carbon copies were not signed by witnesses and the question then becomes of importance whether or not, being carbon copies, the original itself was ever signed by the witnesses, or in other words, whether the will was duly executed. It is true that the three witnesses testified definitely to the fact that they signed the will in the presence of the testator and of each other and other testimony was introduced tending to show that the destroyed will was signed.

However, we have this unusual condition. The lawyer who drew the will and the person in whose favor the will was made in a comparatively short time after the same was alleged to have been executed, made a search for the lost will, with a statement that the testator had not signed the will but had stated that he intended to seek the advice of his local counsel. This situation clearly appears in the evidence of the lawyer seeking the probate in recounting his conversation with the two local attorneys and is more definitely brought out by the letter exhibited. It is true that counsel gives a very satisfactory explanation of this matter and there is no reason for us to doubt its truth, but we are of the opinion that the circumstances so detailed in evidence were a matter of fact for the jury to consider when they sought to determine, as they must necessarily do, the question as to whether the original will was ever executed.

**Sec. 10504-38 GC** seeks to surround the probate of copies with special precautionary provisions. The court must be satisfied that the will was executed in the mode provided by law; that its contents are substantially proved; that it was unrevoked at the death of the testator and has been destroyed since his death or before his death if his lack of knowledge of such destruction can be proved by **clear and convincing** testimony.

It is true that the probate of a copy is prima facie evidence of the contents and due execution of the will, but it is only prima facie and all the matters essential to the probate of a copy are as rebuttable as the numerous other matters that may be an issue in the contest of a will where the probate of a copy is not involved. While the probate of an original will is prima facie evidence of its due attestation and other essential features, each and every one may be attacked by evidence produced to overcome the presumption and so this case, in addition to the question of revocation by the testator, has also the question as to whether or not the original will was itself ever executed.

A rebuttable presumption arising out of each issue may be overcome by evidence which counterbalances the evidence to sustain the presumption, but any rebuttable presumption must be removed by the same degree of proof necessary to sustain the issue.

The case of **Cole v McClure, 88 Oh St 1,** holds:

"2. To establish a lost or destroyed will the evidence of its execution and its contents must be clear, strong, positive, free from bias, and convincing beyond a reasonable doubt.

"3. Where a will has been lost or destroyed before the death of the testator, the law presumes that he revoked it; * * * the evidence to overcome this presumption must be certain, satisfactory and conclusive that it was unrevoked and in existence after he became 'incapable by reason of insanity to make a will'."

The Court states, in substance, through Wilkin, J., that the first assignment challenges the sufficiency of the evidence produced at the trial, to establish a lost or destroyed will. The burden of proof is on a party seeking to establish a lost will by parol evidence to prove its contents by evidence strong, positive and free from doubt. The evidence must be clear, certain and conclusive as to its execution and its provisions and conditions. Where a will

unrevoked has been lost or destroyed, its contents may be proved by parol, but the fact that it was not revoked must be established by clear and satisfactory proof. Strictness is required in order that the courts may be sure that they are giving effect to the will of the deceased and not making a will for him. If there be not some stringency in the rule, if a doubtful inference is to authorize establishment of a will, an inducement of opportunity may be offered for settting up spurious wills. Page 14 contains an interesting statement as to the consideration to be given to declarations of a testator as to whether or not he had destroyed his will which may be cited as supplemental to that already stated by us.

When a will once known to exist and to have been in the custody of the testator cannot be found after his decease or after he became insane the legal presumption is that it was destroyed by the testator with the intention of revoking it. Citing the Behrens case.

It has been stated that in order to permit the presumption that the testator destroyed his will it must be shown that it was in his possession so that he might have been able to destroy it. In the case at bar there is no direct evidence upon this point, except the statement of Converse and the statement of Mr. Martin that after retaining in his possession the will for a period of about six months, he turned it over to Mr. Kohler upon Kohler's statement that Mr. Jones wished to get possession of it and Mr. Martin states that it is his belief that Kohler returned the will to Mr. Jones. This may not be very satisfactory evidence that Mr. Jones had possession of the will so that he could destroy it, yet it is such evidence as should be submitted to the jury on this particular point.

In the case of **Kennedy, Exr. v Walcutt, 118 Oh St 442,** the court in the fifth syllabus discusses the degree of proof necessary to remove a presumption and states in the next syllabus,

"6. In a will contest, by virtue of the statute, the burden of proof is cast upon the contestant of the will and such burden never shifts from him; and before a jury would be justified in setting aside a will, the evidence adduced in the case against the will must outweigh both the evidence adduced in favor of the will and the presumption arising from the order of the probate court admitting the will to probate as the valid last will and testament of the testator."

In spite of this heavy burden placed upon the contestant, we are of the opinion that the evidence produced in this case was sufficient to place the whole matter, as to the validity of the will, before the jury.

The power of the court to grant a motion for judgment notwithstanding the verdict is found in §11601, GC. The portion which was made effective by the amendment of September 2, 1935 is here emphasized,

"When, upon the statements in the pleadings **or upon the evidence received upon the trial,** one party is entitled by law to judgment in his favor, judgment shall be so rendered by the court, although a verdict has been found against such party and **whether or not motion to direct a verdict may have been made or overruled, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence."**

This amendment is so new that we find no other interpretation of the new matter than that which we made in the case of **Miller v Starr Company, 57 Oh Ap, 485 at page 488 et seq.** Under the statute, before amended, a motion for judgment notwithstanding the verdict served as demurrer to the pleadings and raised only the question of law and, if sustained, would be effectuated by judgment of the court. We state,

"To what extent this rule is modified by the amendment pointed out is not necessary to state, except we are of the

opinion that the 'evidence' which could be the basis of such judgment, must be such that reasonable minds could not reach different conclusions. The same rule that applies to directed verdicts should apply."

It will be further noted that where the amended section permits the evidence to be considered, there is a provision that no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence. That clearly means that where there is a debatable question upon which reasonable minds might differ, the court is without authority to render a judgment notwithstanding the verdict of the jury.

We again state our position that there being no ground to question the execution of the original will, by virtue of admission made by counsel and further a statement made by the testator of his intention to destroy his will and the original will not being found, these questions were such as made the submission of the case to a jury imperative and the court was without authority to and there was no basis established that would authorize the court to render a judgment establishing the will notwithstanding the verdict of the jury that the paper writing submitted was, as a fact, not the last will and testament.

We have examined many cases, not referred to in the briefs as well as those counsel cite, and for the purpose of further reference may enumerate some of them as follows:

Converse v Star, 23 Oh St 49.
Wagner v Zigler, 44 Oh St 59.
Huston v Hartley, 72 Oh St 262.
Hall v Hall, 78 Oh St 415.
Clark v McFarland, 99 Oh St 100. (In this case the scintilla rule has been drawn in question but we regard the new rule as to reasonable minds as being a substitute for the scintilla rule).
Stein v Kester, 46 Oh Ap, 245.

Judgment of the Court of Common Pleas reversed. Cause remanded.

HORNBECK, PJ. & BARNES, J., concur.