[Civ. No. 23322.   Second Dist., Div. Three.   Dec. 18, 1958.]

T. L. MUELLER, as Executor, etc., et al., Respondents, v. JOSEPHINE MARSHALL et al., Appellants.

W. E. Starke for Appellants.

Clifton A. Hix, Elizabeth Hix and Raymond Choate for Respondents.

SHINN, P. J.—This action is by Mueller as executor of the will of Ellery D. Marshall, deceased, and by nephews and a niece of the decedent who are beneficiaries under his will, the purpose of the action being to procure the annulment of a quitclaim deed executed by decedent in favor of his brother, Howard Marshall, and Howard's wife. Judgment was in favor of plaintiffs and defendants appeal. We find no merit whatever in the appeal.

The court found that on November 9, 1950, Ellery owned a lot in Wilmington, California; Howard owned real property in San Diego; on or about the said date, Ellery and Howard agreed that each would execute a quitclaim deed of his property in favor of the other for the sole purpose of avoiding proceedings in probate. The deeds were executed and were placed by Howard in a safety deposit box to which only he and his wife had access; in June 1954, the agreement was cancelled by mutual consent and Howard sold his San Diego property; later, at the request of Ellery, Howard returned Ellery's deed and Ellery tore it into pieces, twice lengthwise and twice crosswise; Ellery died August 19, 1956, leaving a will by which $10 was bequeathed to Howard and the remainder of his estate to the said nephews and niece. Two days after Ellery's death, Howard obtained possession of the pieces of the deed, took them to the office of his attorney who taped them together and caused the document to be placed of record August 21, 1956, two days after Ellery's death. Howard and his wife then took possession of the Wilmington property and have lived there ever since. The court found the facts as we have related them, that there was no consideration for Ellery's deed, neither he nor Howard intended by his deed to divest himself of title or to convey any present interest to the other and that each intended that his deed would not become operative unless he should predecease the other. The findings have ample support in the evidence. Howard, called under section 2055, Code of Civil Procedure, testified that the purpose and agreement was "whoever went first, why the last would have it. . . . Either one, yes, could dispose of the property at any time they wanted"; he was keeping the deed for Ellery; the survivor would get both pieces of property; when he sold his

property he destroyed the deed in favor of Ellery; he bought bonds with the proceeds, put them in the safe deposit box in an envelope marked "in case of accident this property belongs to E. D. Marshall." Howard also testified that October 19, 1955, Ellery handed him the torn pieces of the deed "It was tore just like that—he just said he tore it accidentally"; his attorney pasted the pieces together and later had the instrument recorded.

From the facts testified to by Howard with respect to the original transaction it resulted as a matter of law that the deeds were testamentary in character, there was no intention on the part of either grantor to convey a present interest in his property and therefore there was no effective delivery of Ellery's deed to Howard. (15 Cal.Jur.2d 486-487.)

Howard E. Crandall testified that he was the attorney for Ellery, that at Ellery's directions he demanded of Howard a return of the deed, and it was returned in May 1954, that he prepared Ellery's will on October 24, 1955, and that the will was admitted to probate.

Plaintiff Mueller testified that he was named as executor of Ellery's will; on the day the will was executed Ellery brought it to him and told him that he had taken his deed in favor of Howard to a bank and asked what he should do with it; an officer of the bank told him the best thing to do would be to destroy it and that he "tore" it up. "I tore it this way and I tore it around this way" (indicating a motion of tearing it). Defendants' objection to this evidence was overruled.

The probate file in the matter of Ellery's estate was received in evidence. It contains a creditor's claim for $1,194.75 presented by the County of Los Angeles, Department of Charities, duly approved by the executor and the court. It is alleged in the claim that the indebtedness is secured by a mortgage executed by Ellery on the property in question October 17, 1955, to secure a promissory note in favor of the county in the amount of all the institutional care that Ellery had received or might receive from the county.

The principal contention on appeal is that the court was required to believe the testimony of Howard that Ellery had stated to him that the deed was torn up accidentally and that he gave the pieces to Howard just two days after he had executed the note and mortgage in favor of the county. This, it is claimed, constituted a valid delivery of the deed as of that date.

It is true that there was no direct evidence contradicting the testimony of Howard but we do not believe the court was required to give his testimony full credit, even though he apparently testified fully and frankly as to the circumstances under which the deeds were executed and the purpose of their execution. There was circumstantial evidence which supports the court's disbelief in Howard's testimony that Ellery gave him the pieces of the deed. Howard testified that as soon as he got the pieces of the deed from Ellery he took them to his attorney who pasted them together; that was almost a year before Ellery died and it must have seemed strange to the court that neither Ellery, Howard nor Howard's attorney realized the irregularity of pasting together the torn fragments of the deed rather than to have a new deed executed. The recorded deed shows that it was placed of record at the request of Mr. Starke, Howard's attorney, who has offices in San Diego. Although Howard testified that he took the pieces of the deed to his attorney within two days after he received them from Ellery there was no evidence that after they were pasted together they were returned and retained by him until Ellery's death, nor as to how the document got back into the hands of Mr. Starke in order for him to forward it to the recorder's office. Even if the mutilated instrument had been handed to Howard the fact that it was not recorded until after Ellery's death, considered in connection with the evidence of the original transaction, would have warranted the court in finding that Ellery did not intend to effect a present conveyance of the property and that Howard did not understand that the document would be effective during Ellery's lifetime.

It is contended that it was error to receive the testimony of Mueller that Ellery told him he intentionally tore up the deed. There was no error. It was in question whether the act was intentional or accidental. Ellery's statement that it was accidental was made, if at all, October 19, 1955. His statement to Mueller was made about five days later. Evidence of the intention of Ellery was provable by his statement to Mueller as well as by his statement to Howard. It would be a strange rule that would allow evidence of the statement of Ellery that the act was accidental and bar his statement made shortly thereafter that it was intentional. The latter statement was just as good evidence as the former one of Ellery's intention. The hearsay rule does not exclude evidence of declarations under such circumstances where they are

offered to prove the intention of the actor. (*Whitlow* v. *Durst,* 20 Cal.2d 523 [127 P.2d 530].)

It was immaterial whether the deed was torn accidentally or purposely. If there had been, originally, a valid delivery of the deed to Howard, Ellery's intentionally tearing it up would not have destroyed its efficacy. However, it happened to be torn if Ellery gave the pieces to Howard intending that they should be put together and serve as a deed, the document as restored would have been no more and no less effective than it was before the mutilation.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.