387 P.2d 16

**In the Matter of the ESTATE of William P. KILLGORE, Deceased.**

**James KILLGORE, Jessie Howerton, Jennie Harris, Josephine Gould and Doris E. Killgore, individually and as guardian ad litem of Wayne Killgore, a minor, Contestants, Plaintiffs-Appellants,**

v.

**Bertha KILLGORE, Proponent, Defendant-Respondent.**

**No. 9307.**

Supreme Court of Idaho.

Nov. 22, 1963.

Cox, Ware, Stellmon & O'Connell, Lewiston, for appellants.

William J. Dee, Grangeville, for respondent.

TAYLOR, Justice.

This cause was previously before this court, In re Killgore's Estate, 84 Idaho 226, 370 P.2d 512. On that appeal we held that the defendant (respondent here), proponent of a lost will, was not rendered incompetent to testify as one of the two "credible witnesses" required by I.C. § 15–231, to prove the provisions of the lost will, by the fact that she was a beneficiary under the will. After the remand in that case, the cause was tried to a jury on two issues:

"1. Was the will in question revoked by Mr. Killgore prior to his death?

"2. If the will was not revoked, have the contents been proved as provided by law?"

The jury found that the will had not been revoked and that its provisions had been proven as provided by law. Contestants, a son and daughters of the testator, brought this appeal from the judgment holding the will valid and entitled to probate.

The assignments challenge only the finding that the will was not revoked, and urge specifically that the exclusion of certain testimony tending to prove revocatory acts and declarations of the testator was erroneous. So far as applicable here, the statutory requirements for revocation are:

"Except in the cases in this chapter mentioned, no written will, nor any part thereof, can be revoked or altered otherwise than: * * *

"2. By being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by some person in his presence and by his direction." I.C. § 14–307.

The will was a joint will executed by the testator and the proponent, his widow, respondent here, on March 14, 1951, in the law office of Wilbur L. Campbell, an attorney, since deceased, and was witnessed by Campbell and his secretary, Mrs. Fremming. The widow testified that after its execution the will was sealed in an envelope and placed by Campbell in the safe in his office, and that she had never again seen the will.

Mrs. Fremming testified that she could not remember whether the will was placed in the safe; that wills drawn by Campbell were usually left with him and kept in his safe; that some wills so drawn were taken away by the testators; and that she had no specific recollection as to whether this will was left with Mr. Campbell.

Jay Harris, the husband of one of the contestants and son-in-law of the testator, testified that in May, 1955, the testator exhibited the original will to him and Robert Killgore (the latter a son, since deceased, of the testator); that most of the last page of the will had been cut off; that the part removed was the part bearing the signatures of the testator and testatrix, the attestation clause and the signatures of the subscribing witnesses.

In the absence of the jury the following testimony by the witness Harris was offered and rejected by the court:

"Q  *  *  *  Just relate the conversation in full that occurred at that time in relation to the will to the best of your recollection.

"A  Well, so he said, 'You come in here'—Of course there are a number of other things. I am just briefing this.

"Q  Well, relate it to the will now.

"A  He said, 'You come in here, I want to show you something.' So we went in there and sat down and talked for some little time. It was quite a lengthy conversation. And he said, 'My will is in the bottom of that trunk that Bob Killgore is sitting on with my name removed from it.' And if he would get up off the trunk he would find the will and show it to us. And that is what he did. I have testified to the other.

"Q  Now will you state whether or not at that time, or subsequently, he stated who had torn the name off?

"A  He said, 'I did.'

"Q  Now will you state whether or not he said anything about why he tore his name off?

"A  Repeat that, will you?

"Q  Did he say anything about why he had torn his name off the will?

"A  Yes.

"Q  What did he say?

"A  In detail?

"THE COURT: Yes.

"Q  Yes. As to why he had torn his name off.

"A  He said that he had changed his mind because he said, 'They are trying to get their hands on my Oregon property.' And he said, 'They would put me on the road tomorrow if they can get their hands on that Oregon property.' And he said, 'I destroyed that will.'

"Q  Will you state whether or not he said anything as to who 'they' were?

"A  Yes.

"Q  What did he say?

"A  Bertha and Jay.

"Q  All right. Now after Mr. Killgore got out the album and went over to the table with it and found the envelope and took the paper out of it and handed it to you as you testified, did he say anything at the table while you and Bob Killgore were looking at the paper? Did he say anything about it to you at that time?

"A  About the paper itself he said, 'I have got both of you boys together so that you both know what has taken place here.' He said, 'I have destroyed this will, I could have told either one of you singly but I wanted you together because one or the other of you might be dead before this comes to a standstill.' "

The court also excluded offered testimony by the witness Jessie Howerton, a daughter of the testator and one of the contestants:

"Q  All right. Now will you repeat what he said.

"A  He said, 'Bertha and Jay think there is a will but there isn't. I saw to that.' That is as near as I can tell you in his own words."

The last offered declaration of the testator was testified to having been made while he and the witness were riding in an automobile in the spring of 1954. The witness had been giving testimony tending to show a change in the attitude of the testator toward his wife and son, Jay Killgore, chief beneficiaries under the will. The exclusion of the foregoing offered testimony is specifically assigned as error.

A search was made of the safe and files in the office of the deceased attorney Campbell, but no will was found. A search of the personal effects of the testator resulted in the finding of an unexecuted carbon copy of the will, but the original was not found.

Where a will is left in the custody of a person other than the testator and is

not found after the death of the testator, there is no presumption that it was revoked. Annotations, 3 A.L.R.2d 949, 172 A.L.R. 354, 79 A.L.R. 1493. In such case oral declarations of the testator, in the absence of evidence of some act of revocation required by the statute, are not competent to prove revocation, for the reason that the statute does not permit a testator orally to revoke his will. I.C. § 14–307; Crampton v. Osborn, 356 Mo. 125, 201 S.W.2d 336, 172 A.L.R. 344, Annotation 354; Annotation 79 A.L.R. 1493.

However, where a will is left in the custody of the testator, or is readily accessible to him, or is last seen in his possession, and cannot be found after his death, a presumption arises that he destroyed the will with intent to revoke it. In re Rodda's Estate, 152 Cal.App.2d 300, 313 P.2d 582; In re Salter's Estate, 209 Or. 536, 307 P.2d 515; In re Bond's Estate, 172 Or. 509, 143 P.2d 244; In re McCoy's Estate, 49 Or. 579, 90 P. 1105; Chenoweth v. Cary (Ohio App.) 31 N.E.2d 716; McClellan v. Owens, 335 Mo. 884, 74 S.W.2d 570; 95 C.J.S. Wills §§ 385c, 403; 57 Am.Jur., Wills, § 549; Annotations 3 A.L.R.2d 949, 172 A.L.R. 354, 79 A.L.R. 1493.

The presumption is rebuttable and oral declarations of the testator tending either to support or rebut the presumption are admissible on the issue of revocation. Hull v. Cartin, 61 Idaho 578, 105 P.2d 196; In re Bond's Estate, 172 Or. 509, 143 P.2d 244; In re Welch's Estate, 60 Ariz. 215, 134 P.2d 701; In re Ronayne's Estate, 103 Cal.App.2d 852, 230 P.2d 423; In re McCoy's Estate, 49 Or. 579, 90 P. 1105; Chenoweth v. Cary (Ohio App.) 31 N.E.2d 716; McClellan v. Owens, 335 Mo. 884, 74 S.W.2d 570; Annotations, 3 A.L.R.2d 949 (footnote p. 960), 172 A.L.R. 354, 79 A.L.R. 1493; 95 C.J.S. Wills, § 403; 68 C.J., Wills §§ 776(b), 780; 57 Am.Jur., Wills, § 563.

"Where it is shown that a will was executed by a decedent, and that it was last seen or heard of in his custody, or in a place to which he had ready access, but after his death it cannot be found, a presumption ordinarily arises that the testator destroyed it in his lifetime with the intention of revoking it, and, accordingly, the burden of proving the contrary is on the person seeking to establish the will." 95 C.J.S., Wills, § 385c., p. 283, and cases collected in footnote p. 284.

"Where a will which cannot be found following the death of the testator is shown to have been in his possession when last seen, the presumption is, in the absence of other evidence, that he destroyed it animo revocandi." 57 Am. Jur., Wills, § 549.

In re Rodda's Estate, 152 Cal.App.2d 300, 313 P.2d 582, involved a lost will. The attorney who drew it, by affidavit averred that the testatrix took the will from his of-

fice and he had no knowledge of its existence or whereabouts. The court said:

"* * * Two inferences arise from these facts: '(1) that the will was destroyed by the testator [testatrix], and (2) that the act of destruction was done *animo revocandi.* In re Estate of Johnston, 188 Cal. 336, 339, 340, 206 P. 628; In re Estate of Moramarco, 86 Cal.App.2d 326, 334, 194 P.2d 740; 26 Cal.Jur. 807, sec. 141.' In re Estate of Arbuckle, 98 Cal.App.2d 562, 566, 220 P.2d 950, 953, 23 A.L.R.2d 372. See also In re Estate of Ronayne, 103 Cal. App.2d 852, 856, 230 P.2d 423." 313 P.2d at 584.

"While the rule is uniform that the failure to find a will which was duly executed and was in the possession of, or readily accessible to, the testator, or a will which was not shown to have been in the custody of another at the time of its loss, raises a presumption that he revoked it, the great weight of authority is to the effect that such presumption is not conclusive and so may be overcome by sufficient evidence, the point being made in some cases that the burden of proof of non-revocation is on the proponent of the will." 3 A.L.R.2d p. 952, and cases collected.

"Moreover, the weight of authority is to the effect that declarations of the testator, although not made at the time

of the alleged act of revocation by mutilation, cancelation, or destruction of the will, are admissible to show the intent with which the testator performed such act, and so to support or negative the proposition that the will was thus revoked. Such rule applies to prior declarations as well as to statements uttered subsequently to the act alleged to have revoked the will." 57 Am.Jur., Wills, § 563, p. 386. ·

In a footnote to the Annotation on proof of lost wills, in 3 A.L.R.2d at page 960, the annotator has collected cases supporting the statement that:

"In many cases, it has been recognized that declarations of a testator whose will could not be found after his death were admissible to show the testator's intention to destroy the will, or that he did destroy it."

"* * * But evidence of declarations by the testator that he had destroyed his will or indicating an intention not to adhere to it is also competent to strengthen and fortify the presumption which the law attaches to the fact that the will cannot be found." In re McCoy's Estate, 49 Or. 579, 90 P. 1105, at 1106.

"The weight of authority is to the effect that declarations of a testator, although not made at the time of the act of revocation by mutilation or other-

wise, are admissible to show the intent with which the testator performed such act." In re Bond's Estate, 172 Or. 509, 143 P.2d 244, at 262.

This court in the case of Crenshaw v. Crenshaw, 68 Idaho 470, 199 P.2d 264, dealt with a general rule of evidence applicable here. That case involved the admissibility of declarations of a decedent on the issue of delivery of a deed. We there quoted from Whitlow v. Durst, 20 Cal.2d 523, 127 P.2d 530, 531, as follows:

" 'When intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving. Thus, in cases involving the delivery of deeds, declarations of the alleged grantor made before and after the making of the deed are admissible upon the issue of delivery, and it is immaterial that such declarations are in the interest of the party producing them.' " 68 Idaho at 476, 199 P.2d at 267.

That rule has subsequently been followed in this and other jurisdictions. Brett v. Dooley, 80 Idaho 237, 327 P.2d 355; McNabb v. Brewster, 75 Idaho 313, 272 P.2d 298; Watenpaugh v. State Teachers' Retirement System, 51 Cal.2d 675, 336 P.2d 165; Mueller v. Marshall, 166 Cal.App.2d 367, 333 P.2d 260; Guerin v. Guerin (hearing denied), 152 Cal.App.2d 696, 313 P.2d 902; Wilcox v. Salomone, 118 Cal.App.2d 704, 258 P.2d 845; Thompson v. Steinkamp, 120 Mont. 475, 187 P.2d 1018; New York Life Ins. Co. v. Harrington (9th Cir.) 299 F.2d 803.

In support of her contention that the declarations of the testator were not admissible on the issue of revocation because they were not made in connection with an act of revocation and were not a part of the res gestae, respondent cites: Brownfield v. Brownfield (Mo.) 249 S.W.2d 389, 41 A.L. R.2d 387; McElroy v. Phink, 97 Tex. 147, 76 S.W. 753; Allen v. Scruggs, 190 Ala. 654, 67 So. 301; Pennington v. Perry, 156 Ga. 103, 118 S.E. 710; Hargroves v. Redd, 43 Ga. 142. Those cases are all distinguishable from the one at bar.

In Brownfield v. Brownfield the Missouri court held that declarations of the testatrix that she had executed a subsequent will were not admissible to prove due execution of the subsequent will. The court distinguished that case from an earlier Missouri decision and reaffirmed the rule applicable to the facts in the present case.

McElroy v. Phink involved a lost will. The Texas court held the fact that the will was last seen in the possession of a person other than the testator negatived any presumption of revocation; and also that

declarations of the testatrix shortly before her death, that she did not like the provisions of the will and had destroyed it, although not part of the res gestae, were admissible on the issue of revocation. This principle has been subsequently followed by the Texas supreme court in Rape v. Cochran (Tex.Civ.App.) 217 S.W. 250, and Nolan v. Smith (Tex.Civ.App.) 166 S.W. 2d 750.

In Allen v. Scruggs the Alabama court concluded from the record that the will was delivered by the testator to a beneficiary and was lost by one to whom the beneficiary had delivered it for safekeeping. The will had not been in the possession of the testator and there being no showing of a revocatory act on his part, the court properly held that declarations by him that he had destroyed it were not competent. He could not revoke his will by parol.

Pennington v. Perry did not involve a lost or mutilated will, and hence no presumption of a revocation arose in that case.

Hargroves v. Redd did not involve a lost will, nor the presumption of revocation arising therefrom. In that case the testator's will, made in 1852, contained a provision for the emancipation of certain of testator's slaves and bequeathed them certain property. This provision was made illegal by a statute subsequently enacted. However, at the date of the testator's death that statute had been supplanted by the law freeing the slaves. The court held that the will had not been revoked by the statute making a provision of the will illegal. As to the declarations of the testator, the case supports the proposition that a testator cannot orally revoke his will.

In the present case the jurors were properly instructed that if they found the will was left in the possession of attorney Campbell, there was no presumption arising out of the failure to find it, that it was revoked by the testator, "unless you find from the evidence that the will, after such entrustment, subsequently came into Mr. Killgore's possession." They were also properly instructed:

"If you should find from the evidence that the will when last seen was in the possession of the testator and after his death could not be found, the legal presumption, in the absence of credible evidence to the contrary, is that the testator destroyed it with the intention of revoking the same.

"A legal presumption has the effect of evidence and is sufficient to support a finding or verdict by you until, or unless, rebutted or overcome by contrary evidence which you find credible."

The question as to whether the presumption of revocation arose, depended upon whether the jurors believed the testimony of Jay Harris that he saw the will in testator's possession in 1955. If they did so believe and so find, the presumption would have arisen even though they did

not believe that the signatures and attestation had been removed therefrom. Such removal would itself constitute a revocation if shown to have been done by the testator with intent to revoke. In re Tyler's Estate, 159 Ohio St. 492, 112 N.E.2d 668; In re Bakhaus' Estate, 410 Ill. 578, 102 N.E.2d 818; Canterberry v. Canterberry, 120 W. Va. 310, 197 S.E. 809.

It may appear from the jury's finding that the will was not revoked; that the jurors did not believe the testimony of Jay Harris that he saw the will in deceased's possession in 1955. However, we cannot conclude therefrom that the exclusion of the declarations of the testator made to the witnesses Harris and Howerton, was harmless error. It is conceivable that had the offered testimony been admitted, the jury may have found that the will was in the possession of the testator and that the presumption of revocation did arise, and had not been overcome by other evidence. We must, therefore, hold that the rejection of the offered testimony was prejudicially erroneous and requires a retrial of the issue of revocation.

The judgment is reversed and the cause is remanded for a new trial, limited to the issue of revocation.

Costs to appellant.

KNUDSON, C. J., and McQUADE, McFADDEN and SMITH, JJ., concur.