FIRST NATIONAL BANK OF ADAMS *vs.* LEON BRIGGS & others.

Berkshire. September 16, 1952. — October 29, 1952.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Will*, Revocation.

A decree of a Probate Court allowing a will as originally typewritten and executed was affirmed where a conclusion was warranted that the maker, by changing much of the will with pencil markings, did not intend presently to revoke the will but merely contemplated making a new will with different provisions.

PETITION, filed in the Probate Court for the county of Berkshire on May 1, 1951, for proof of the will of Frank E. Briggs, late of Adams.

The case was heard by *Hanlon*, J.

*Walter J. Donovan*, for the appellants.

*Frederick M. Myers, Jr.,* (*Harold R. Goewey, Valmore Cote, & Gerald F. Gravel* with him,) for the appellees.

---

LUMMUS, J.   On September 12, 1951, the Probate Court
entered a decree allowing the will of Frank E. Briggs, late
of Adams, who died on April 15, 1951, as it was originally
executed on March 4, 1950.   Two nephews and one niece,
who were among the next of kin and heirs at law and were
not mentioned in the will, appealed.   The will was originally
drawn in typewriting by a lawyer and was duly executed.
The decedent was of sound mind.   The judge made a find-
ing of material facts.   The will as originally executed gave
to one sister the proceeds of an insurance policy and to
another $50.   It gave to one nephew $25, to another $10,
to one niece $25, to another $500, and to a grandnephew
$500.   To a church the will gave $500.   All the decedent's
bonds and bank deposits were given to still another nephew.
To that nephew and another were given the "home place"
where the decedent lived, with the furniture, stock and tools
thereon, and also a two tenement house and garage, for
their joint lives, with remainder in the home place to the
sons of Wesley Briggs and in the two tenement house to
the sons of Roy Briggs.

In April, 1951, the decedent took the will to the house of
a Mrs. Wakeley, and told her that he "was going to have
a new one made out."   She saw the will.   The decedent had
crossed out much of it in pencil.   As to some legacies he had
changed the amounts.   As to others he had crossed out the
whole legacy.   He had written in pencil a new legacy of
$200 to one Fred Sitcer.   At various times in the autumn
of 1950 the decedent expressed affection for Irving and Roy
Briggs, who were given life interests in real estate by the
will as originally executed.   A few days before he died the
decedent said that when he felt well enough he would call
an attorney, the one who had drawn the will having died,
and have him "fix up his will."   On the day of his death
the decedent pulled his will from under his pillow and asked
Fred Sitcer to read it to him.   Sitcer read it "as best he
could" with the pencilled changes.   The decedent told Sitcer
to bring the will up to the hospital the next day and that

he would then tell Sitcer what lawyer to get and would have the lawyer change his will. He said nothing about revoking the will, and gave no indication as to when he had made the pencilled changes.

The appellants contend that by making the pencil marks on his will the decedent revoked it. The material ways of revoking a will permitted by G. L. (Ter. Ed.) c. 191, § 8, are by "cancelling or obliterating it with the intention of revoking it." The markings upon the will were a sufficient revocation, provided the intent to revoke existed when they were made. *Worcester Bank & Trust Co.* v. *Ellis*, 292 Mass. 88, 91. *Yont* v. *Eads*, 317 Mass. 232. The burden of proof is on the party contending that a will has been revoked. *Worcester Bank & Trust Co.* v. *Ellis*, 292 Mass. 88, 92. The question in this case is, as it was in that case, whether the decedent "when he made the cancellation upon the will, had an intent finally to revoke it, or had a merely 'deliberative' intent to leave the will in full force until a new will should be executed with variant provisions of which the marks on the will furnished some indication." *Ibid.* 93. The intention of the decedent in making the marks was a question of fact. *Porter* v. *Ballou*, 303 Mass. 234. *Batt* v. *Vittum*, 307 Mass. 488. Upon that question statements by the decedent might be received in evidence. *Aldrich* v. *Aldrich*, 215 Mass. 164, 170.

There are indications in the findings that the decedent intended no present and unconditional revocation of his will. If the will were revoked, Irving and Roy Briggs, for whom the decedent expressed particular affection, would have to share with others in an intestate estate. The decedent continued to speak of the instrument as his will, which he intended to "change." He said nothing about revoking the will. With the burden of proof on the appellants, we think that there was no error in the finding that the decedent did not intend presently to revoke the will, but intended to execute a new will changing its provisions.

*Decree affirmed.*