NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-689

IN THE MATTER OF THE ESTATE OF JOHN W. SIMPSON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

John W. Simpson (Simpson) died leaving a will directing that his sister was not to inherit from him. Instead, the will provided that his girlfriend was to receive his entire estate. Simpson's attorney offered an original will into probate that had red marking over the name of Simpson's girlfriend as beneficiary. Simpson's sister objected to the will's admission, arguing that the marking indicated that Simpson had revoked the will and therefore that he had died intestate with the result being that she inherited the estate. After trial, a judge of the Probate and Family Court determined that Simpson had not revoked the will and admitted the will into probate. The sister appeals. After review, we discern no error of law or abuse of discretion, and therefore affirm.

Background.[1]  Simpson met an attorney while playing golf in 2003.  He told the attorney that he was interested in making an estate plan.  He explained that he had never married, had no children, and wanted to ensure that his sister did not inherit from him.[2]  Simpson executed a will on December 30, 2004, drafted by the attorney, which nominated his girlfriend as executrix and sole residuary beneficiary.  The will stated, "I have made no provision herein for my sister . . . for reasons known to me and not by mistake or omission."

In July 2015, the attorney received a letter from Simpson, requesting that the attorney destroy copies of the will.  Rather than destroy the copies, the attorney mailed them back to Simpson.  At some time in 2018 or 2019, Simpson contacted a different lawyer and expressed an interest in writing a new will with a different beneficiary.[3]  However, Simpson never executed a new will.  Likewise, in January 2019, Simpson contacted the lawyer and again expressed an interest in creating a new will,

---

[1] The facts are taken from the judge's written findings dated August 11, 2022.

[2] The parties stipulated that the sister would have been Simpson's sole heir at law but for the will.

[3] There is evidence in the record suggesting that Simpson's girlfriend became incapacitated at some point; a guardian ad litem was appointed to represent the girlfriend's interests.

although he had not yet decided to whom he intended to leave his property. The lawyer never heard back from Simpson.

On February 4, 2020, Simpson got into a car accident and was hospitalized. At the hospital, Simpson told his friend, to whom he had given a power of attorney, that he did not want his sister to visit him. Simpson told his girlfriend's son to go to Simpson's home and retrieve the will to prevent his sister from destroying it. At Simpson's home, the girlfriend's son found Simpson's original will with red marking on it. Specifically, and among other things, the clauses in the will naming Simpson's girlfriend as the residuary beneficiary and executrix were colored in with a red marker, with the original text visible underneath. After Simpson's death, the sister entered Simpson's home and found a copy of the will, on which the residuary clause was marked up with a blue marker and the executrix clause was crossed out.

The sister filed a petition for adjudication of intestacy after the death of her brother. Thereafter, Simpson's attorney filed a petition for probate of Simpson's 2004 will. After trial, the judge allowed the attorney's petition, dismissed the sister's petition, and admitted Simpson's will to probate.

Discussion. The sister argues that the judge's conclusion that the will was not revoked does not follow from the facts found and is not supported by the evidence or applicable law.

3

Specifically, she argues that the use of a red marker on the original will constituted a revocatory act establishing that Simpson intended to revoke the will.

Under Massachusetts law, a testator may revoke a will "by performing a revocatory act on the will, if the testator performed the act with the intent and for the purpose of revoking the will."  G. L. c. 190B, § 2-507 (a) (2). "[R]evocatory act[s] on the will" include "burning, tearing, canceling, obliterating, or destroying the will or any part of it."  Id.

The sister relies on Worcester Bank & Trust Co. v. Ellis, 292 Mass. 88 (1935), for the proposition that crossing out clauses of a will constitutes cancellation even if the words are still legible.  That case involved the striking out of words with a lead pencil.  See id. at 90, 92.  Here, by contrast, the judge found that the marker used over the words, which could still be seen through it, constituted highlighting, not striking out.  In any event, the legal import of a pencil strike versus a marker is not the issue.  As in Ellis, "[t]he real question before us is one of fact," namely, whether Simpson intended to revoke the will.  Id. at 93 (even though pencil strike through words constituted some evidence of cancellation, court reviewed surrounding circumstances to determine whether facts supported finding of intent to revoke will).  See Batt v. Vittum, 307

4

Mass. 488, 490 (1940) (lines across certain paragraphs "undoubtedly constitut[ed] sufficient marks of cancellation to effect a revocation of these paragraphs if there was the requisite intention to revoke them [emphasis added]"). See also Bigelow v. Gillott, 123 Mass. 102, 106 (1877) ("the cancellation by the testator of the sixth and thirteenth clauses of his will, by drawing lines through them, with the intention of revoking them, was a legal revocation of those clauses [emphasis added]"). We give deference to the judge's factual findings unless clearly erroneous. T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 569 (2010).[4]

The judge concluded that the sister did not meet her burden of proving that the testator revoked the will. See Ellis, 292 Mass. at 92. The judge supported this conclusion by finding that "[Simpson] did not intend for [the sister] to inherit any part of his estate." Trial testimony from witnesses, credited by the judge, supported this finding. Simpson's friend

---

[4] The sister argues that our review of the documentary evidence, namely the original will, should be de novo. We disagree. Although "an appellate court may independently review documentary evidence . . . findings drawn partly or wholly from testimonial evidence are accorded deference and are not set aside unless clearly erroneous." Commonwealth v. Tremblay, 480 Mass. 645, 654-655 (2018). Here, the judge made factual findings regarding the decedent's lack of intent to revoke based in part on testimonial evidence. Therefore, her findings are accorded deference.

testified that Simpson had told her that he did not want any property to go to his sister after his death. Simpson's attorney testified that Simpson executed his will in 2004 for the very purpose of ensuring that his sister did not inherit from him. The record offers ample support for the judge's finding.

Simpson's statements made at the hospital dispel the notion that he had revoked the will. Simpson asked his girlfriend's son to go to his home and retrieve his will out of concern that his sister might destroy it. Simpson's friend accompanied the girlfriend's son to Simpson's home, where the original will was found on Simpson's desk. The judge credited the girlfriend's son's testimony that when he asked Simpson at the hospital whether he was leaving his estate to his mother, Simpson replied affirmatively.

Although the testimony at trial tended to show that Simpson reconsidered his testamentary intent in 2018 or 2019, the ultimate question is whether the testator "had an intent finally to revoke [the will], or had a merely 'deliberative' intent to leave the will in full force until a new will should be executed." First Nat'l Bank v. Briggs, 329 Mass. 320, 322 (1952), quoting Ellis, 292 Mass. at 93. Simpson expressed an interest in executing a new will, but he never did so, nor did he select a new beneficiary. In the hospital, Simpson asked his

6

girlfriend's son to retrieve his will for safekeeping.  See

Briggs, supra (that a testator referred to an instrument as his

will shortly before dying indicated that the testator had not

revoked the will).  The girlfriend's son's testimony as to

Simpson's statements at the hospital, which the judge credited,

served as strong evidence that Simpson did not revoke the will.

The sister argues that the judge's finding that Simpson

would not have revoked his will knowing that his sister could

thereby inherit from him was based on speculation.  We disagree.

The judge buttressed this finding not on speculation, but on

witness testimony.  The judge credited the attorney's testimony

that Simpson sought to create an estate plan for the specific

purpose of preventing his sister from inheriting from him.  See

Briggs, 329 Mass. at 322 (considering the testator's

testamentary intent in determining whether the testator intended

to revoke a will).  The judge also credited Simpson's friend's

testimony that Simpson had intentionally excluded the sister

from the will, as well as the girlfriend's son's testimony that

Simpson had asked him to safeguard the will.  The judge's

finding that Simpson did not have an intent to revoke his

existing will is well founded in the record and is not clearly

erroneous.[5]

---

[5] The sister also argues that the judge impermissibly took
into consideration evidence of her supposed bad character and

7

Finally, the sister argues that the judge erred by improperly shifting the burden of proof to her. It is well established that the party contending that a will has been revoked bears the burden of proof. Ellis, 292 Mass. at 92. The judge properly held the sister to her burden.

The sister argues nevertheless that the judge erred by not applying a rebuttable presumption that Simpson revoked the will. See Restatement (Third) of Property (Wills and Other Donative Transfers) § 4.1 comment j, at 283 (1999) (when will is found in testator's possession with revocatory act performed on it, law presumes that testator performed act on will with intent to revoke; presumption may be rebutted by preponderance of evidence). She has not, however, cited to any Massachusetts case law applying this rebuttable presumption. But see Matter of the Estate of Beauregard, 456 Mass. 161, 162-163 (2010) (when will once in testator's possession cannot be found after death, rebuttable presumption arises that testator destroyed will with intent to revoke it).

_____

the good character evidence of Simpson's girlfriend and her son to conclude that she did not "deserve" to inherit. Although the decision does reflect factual matters tending to show the sister in an unflattering light, all of the facts are supported in the record and were unobjected to at trial. And although the judge was "deeply troubled" by the aftermath of Simpson's death, the decision reflects that it was arrived at through correct legal analysis and not on the basis of bias or sympathy.

8

Although the judge did not explicitly walk through the mechanics of applying the rebuttable presumption, it is presumed that the judge, sitting as trier of fact, correctly instructed herself on the law.  See Commonwealth v. Ortiz, 431 Mass. 134, 141 (2000); Cummings v. National Shawmut Bank, 284 Mass. 563, 568 (1933).  Here, as discussed above, the judge soundly concluded that Simpson did not intend to revoke the will.  If the presumption were to apply, the attorney handily rebutted it.  See Mass. G. Evid. § 301(d) (2024) ("If that party comes forward with evidence to rebut or meet the presumption, the presumption shall have no further force or effect").  We discern no error of law.

> Decree and order on petition
>   for formal adjudication
>   affirmed.
>
> Judgment of dismissal
>   affirmed.
>
> By the Court (Rubin,
>   Desmond & Singh, JJ.[6]),
>
> Clerk

Entered: January 3, 2025.

---

[6] The panelists are listed in order of seniority.